LENTZ v. STOFLET.

1. SUBROGATION—LEGAL SUBROGATION.

Legal subrogation rests upon the equitable principle that one who, in order to protect a security *held* by him, is compelled to pay a debt for which another is primarily liable, is entitled to be substituted in the place of and to be vested with the rights of the person to whom such payment is made, without agreement to that effect.

2. SAME—CONVENTIONAL SUBROGATION.

Conventional subrogation arises from an agreement between the debtor and a third person whereby the latter in consideration that there be vested in him the security of the creditor and all his rights thereunder and such third person agrees to make payment of the debt to relieve debtor from a sacrifice and is wholly independent of any interest in the property which the lender may have to protect but does not inure to a mere volunteer who has no equities which appeal to the conscience of the court.

3. SAME—THEORY OF EQUITABLE SUBROGATION—JUNIOR LIENOR'S
   POSITION UNCHANGED.
   The theory of equitable or conventional subrogation is that the
   junior lienor's position is left unchanged by the conduct of
   the party seeking subrogation and that he is not wronged any
   by permitting subrogation.

4. SAME—VOLUNTEER—MORTGAGES.
   Plaintiffs who were without interests to protect in land involved
   and who made loan to debtors without any agreement as to
   subrogation as to rights of mortgagee under first mortgage
   which was thereupon paid up *held*, mere volunteers not entitled
   to be subrogated to rights of first mortgagee and have priority
   over second mortgagee where plaintiffs made loan of two and a
   half times amount due first mortgagee on property covered by
   second mortgage and other land, thereby reducing second mort-
   gagee's possibility of realizing on a deficiency judgment or
   decree on foreclosure of its mortgage.

   BUTZEL, J., dissenting.

Appeal from Wayne; Dingeman (Harry J.), J.
Submitted April 14, 1937. (Docket No. 76, Calendar
No. 39,414.) Decided June 7, 1937.

Bill by Victoria J. Lentz and others against Frank
Stoflet and wife and State Savings Bank of Carleton
and Harry S. German, its conservator, to establish
priority of a mortgage and foreclose it. Cross-bill
by defendant bank and its conservator against de-
fendant Stoflet and wife and plaintiff to establish
priority of a mortgage, for an accounting and to
foreclose. Decree for cross-plaintiff. Plaintiffs ap-
peal. Affirmed.

*Lloyd L. Axford, William E. Tarsney* and *Arthur
Axford,* for plaintiffs.

*Golden & Fallon,* for defendant bank.

Sharpe, J.  William J. Mexico and wife, prior to the happening of the events involved herein, were the owners of a 94.72-acre tract of land in the township of Huron, Wayne county, Michigan; and on April 17, 1917, mortgaged the above premises to the Rockwood State Bank to secure the payment of $4,000.  August 18, 1919, Mexico and wife conveyed the above premises to Frank H. Stoflet and wife. On March 30, 1923, Stoflet and wife mortgaged 68.49 acres of the above mentioned premises to the Rockwood State Bank to secure the payment of $2,200. Upon default of Stoflet and wife to pay the principal and interest of the above described mortgages, the same were foreclosed by advertisement and sold and conveyed to the Rockwood State Bank on August 23, 1929, and September 12, 1929, respectively.

On December 28, 1929, Stoflet and wife mortgaged the 68.49-acre tract to the State Savings Bank of Carleton for the sum of $3,100.  On the 21st day of May, 1930, the Rockwood State Bank discharged their mortgages and conveyed to Stoflet and wife the premises described in the mortgage dated April 17, 1917.

On May 22, 1930, Stoflet and wife paid the State Bank of Rockwood $6,399.01 by check on the back of which was the notation "Anton Kaier" and below that "paid by Stoflet."  The record also shows that Anton Kaier loaned this money to Stoflet and wife as agent for plaintiffs and on the same day a mortgage was executed in favor of plaintiffs in the sum of $16,000 upon the above 68.49-acre tract and two other parcels of land containing 35.90 acres.  At the time the above mortgage was given no mention was made of the fact that the State Savings Bank of Carleton had a mortgage upon a part of the above described premises.

Plaintiffs filed their bill of complaint to foreclose the last above described mortgage and as additional affirmative relief asked that their mortgage be declared a prior lien upon the premises described in the mortgage dated April 17, 1917. The defendant State Savings Bank of Carleton filed an answer to the bill of complaint and a cross-bill to foreclose their mortgage claiming said mortgage to be a first and prior lien upon the land above described. The cause came on to be heard upon an order of reference before a circuit court commissioner who made a finding of facts and conclusions of law in favor of the defendant bank. An order was entered confirming the report of the circuit court commissioner and from which order plaintiffs appeal.

The sole question involved in this cause is the right of plaintiffs to be subrogated to the rights of the Rockwood State Bank in its two mortgages. It is the claim of defendant bank that there was no legal obligation on the part of plaintiff to pay the indebtedness of Stoflet and wife to the Rockwood State Bank. It is conceded by all parties that plaintiffs are not entitled to legal subrogation.

In *French* v. *Grand Beach Co.,* 239 Mich. 575, we said:

"The doctrine of subrogation rests upon the equitable principle that one who, in order to protect a security held by him, is compelled to pay a debt for which another is primarily liable, is entitled to be substituted in the place of and to be vested with the rights of the person to whom such payment is made, without agreement to that effect. This doctrine is sometimes spoken of as 'legal subrogation,' and has long been applied by courts of equity. *Stroh* v. *O'Hearn,* 176 Mich. 164, 177. There is also what is known as 'conventional subrogation.' It arises from an agreement between the debtor and a third person

whereby the latter, in consideration that the security of the creditor and all his rights thereunder be vested in him, agrees to make payment of the debt in order to relieve the debtor from a sacrifice of his property due to an enforced sale thereof. It is wholly independent of any interest in the property which the lender may have to protect. It does not, however, inure to a mere volunteer who has no equities which appeal to the conscience of the court.''

In 25 R. C. L. p. 1324, § 11, it is said:

"While subrogation is founded on principles of equity and benevolence, and may be decreed where no contract exists, yet it will not be decreed in favor of a mere volunteer, who, without any duty, moral or otherwise, pays the debt of another; for such a person can establish no equity, and can obtain the right of substitution by contract only."

In *Stroh* v. *O'Hearn,* 176 Mich. 164, 177, we said:

"Subrogation is an equitable doctrine depending upon no contract or privity, and proper to apply whenever persons other than mere volunteers pay a debt or demand which in equity and good conscience should have been satisfied by another. It is proper in all cases to allow it where injustice would follow its denial, and in allowing it all injustice should be guarded against so far as possible. We need not go afield in other jurisdictions for authority upon this subject; the law is well settled in this State."

In *Dunitz* v. *Woodford Apartments Co.,* 236 Mich. 45, 49, we said:

"Ordinarily, subrogation will not in any event be accorded a purely volunteer. Plaintiff had here no interest to protect until he voluntarily, and for surely no benevolent reason, but solely for the purpose of self-aggrandizement, injected himself into the already troubled affairs of those interested in this property. It is clear that one who seeks to be sub-

rogated must show some ground for equitable intervention. *Bond* v. *Montgomery,* 56 Ark. 563 (20 S. W. 525, 35 Am. St. Rep. 119), and *Richards* v. *Cowles,* 105 Iowa, 734 (75 N. W. 848).''

The theory of equitable or conventional subrogation is that the junior lienor's position is left unchanged by the conduct of the party seeking subrogation and that he is not wronged any by permitting subrogation. An examination of the facts involved in this cause in the light of the above rule shows that the total amount of money which Stoflet and wife owed to the Rockwood State Bank on May 22, 1930, was $6,399.01 and that the indebtedness incurred by Stoflet and wife in the transaction with plaintiffs was $16,000. The mortgages formerly held by the Rockwood State Bank covered only 94.72 acres of land while plaintiffs' mortgage not only incumbered 68.49 acres of the above mentioned land but also 35.90 acres of land owned by Stoflet and wife in addition thereto. The possibility of realizing on any deficiency judgment or decree granted against Stoflet and wife would be lessened because of plaintiffs' prior lien. When plaintiffs loaned the money they had no interests to protect. It was done without any agreement or understanding that they were to enjoy the fruits of subrogation. It was voluntarily done upon their part and to grant it would not leave defendant in its former position. A mere volunteer is not entitled to subrogation.

The decree of the lower court is affirmed. Defendants may recover costs.

FEAD, C. J., and NORTH, WIEST, BUSHNELL, and CHANDLER, JJ., concurred with SHARPE, J.

POTTER, J. (*concurring in affirmance*). The effect of the opinion of Mr. Justice SHARPE herein is to overrule *Walker* v. *Bates,* 244 Mich. 582.

Subrogation "from its very nature, never could have been intended for the relief of those who were in a condition in which they were at liberty to elect whether they would or would not be bound." *Gadsden* v. *Brown,* 1 Speer's Eq. (S. C.) 37. This, says the Supreme Court of the United States, is perhaps as clear a statement of the doctrine as can be found anywhere. *Ætna Life Ins. Co.* v. *Middleport,* 124 U. S. 534 (8 Sup. Ct. 625). This was the rule recognized in *Smith* v. *Austin,* 9 Mich. 465, and *Kitchell* v. *Mudgett,* 37 Mich. 81. In *Desot* v. *Ross,* 95 Mich. 81, complainant was sought to be subrogated. It is said:

"She was a stranger to the title, and as such could not, by payment of the whole or any portion of the mortgage, become subrogated to the rights of the mortgagee."

The court cited in support of this proposition *Kelly* v. *Kelly,* 54 Mich. 30, 47; *Shinn* v. *Budd,* 14 N. J. Eq. 234, 237; *Brice* v. *Watkins,* 30 La. Ann. 21; and quoted with approval from *Sanford* v. *McLean,* 3 Paige Ch. (N. Y.) 117, 122 (23 Am. Dec. 773), as follows:

" 'It is only in cases where the person advancing money to pay the debt of a third party stands in the situation of a surety, or is compelled to pay it to protect his own rights, that a court of equity substitutes him in the place of the creditor as a matter of course, without any agreement to that effect. In other cases the demand of a creditor which is paid with the money of a third person, and without any agreement that the security shall be assigned or kept on foot for the benefit of such third person, is absolutely extinguished.' "

In *Stroh* v. *O'Hearn,* 176 Mich. 164, 177, it is said:

"Subrogation is an equitable doctrine depending upon no contract or privity, and proper to apply whenever persons other than mere volunteers pay a debt or demand which in equity and good conscience should have been satisfied by another."

The court cited *Detroit Fire & Marine Ins. Co.* v. *Aspinall,* 48 Mich. 238; *Lockwood* v. *Bassett,* 49 Mich. 546; *Warner* v. *Hall,* 53 Mich. 371; *Kelly* v. *Kelly, supra; White* v. *Newhall,* 68 Mich. 641; *Palmer* v. *Sharp,* 112 Mich. 420; *Dayton* v. *Stahl,* 132 Mich. 360; *Sproal* v. *Larsen,* 138 Mich. 142; *Taylor* v. *Roniger,* 147 Mich. 99.

In *Palmer* v. *Sharp, supra,* it is held that before subrogation can take place by which a party advancing money to discharge a lien can be substituted in place of the lienor, it must appear that the party so advancing the money is under some legal obligation to make the payment—that such subrogation does not take place in favor of a mere volunteer. And in *Parks* v. *Sherman,* 208 Mich. 697, it is said:

"Bouvier's Law Dictionary (8th Ed. 1914), in defining 'subrogation' states that 'a principle which lies at the bottom of the doctrine is that the person seeking it must have paid the debt under grave necessity to save himself a loss. The right is never accorded to a volunteer.'

"This underlying principle is recognized in and applicable to the facts in *Stroh* v. *O'Hearn,* 176 Mich. 164, cited by plaintiff, and in other Michigan decisions there referred to. In *Palmer* v. *Sharp,* 112 Mich. 420, it is said, 'This is undoubtedly the general rule.'"

In 37 Cyc. pp. 375, 376, it is said:

"It is only in cases where the person paying the debt of another stands in the relation of a surety or

is compelled to pay in order to protect his own interests, or by virtue of legal process, that equity substitutes him in the place of the creditor without any agreement to that effect; in other cases the debt is absolutely extinguished, and thus a mere volunteer or intermeddler who, having no interest to protect and without any legal or moral obligation, pays the debt of another is not entitled to subrogation without an agreement to that effect or an assignment of the debt, the payment in his case absolutely extinguishing the debt."

In 25 R. C. L. pp. 1324, 1325, it is said:

"While subrogation is founded on principles of equity and benevolence, and may be decreed where no contract exists, yet it will not be decreed in favor of a mere volunteer, who, without any duty, moral or otherwise, pays the debt of another; for such a person can establish no equity, and can obtain the right of substitution by contract only."

In *French* v. *Grand Beach Co.,* 239 Mich. 575, it is said:

"The doctrine of subrogation rests upon the equitable principle that one who, in order to protect a security held by him, is compelled to pay a debt for which another is primarily liable, is entitled to be substituted in the place of and to be vested with the rights of the person to whom such payment is made, without agreement to that effect. This doctrine is sometimes spoken of as 'legal subrogation,' and has long been applied by courts of equity. *Stroh* v. *O'Hearn,* 176 Mich. 164, 177. There is also what is known as 'conventional subrogation.' It arises from an agreement between the debtor and a third person whereby the latter, in consideration that the security of the creditor and all his rights thereunder be vested in him, agrees to make payment of the debt in order to relieve the debtor from a sacrifice of his property due to an enforced sale

thereof. It is wholly independent of any interest in the property which the lender may have to protect. It does not, however, inure to a mere volunteer who has no equities which appeal to the conscience of the court.''

In *Walker* v. *Bates,* 244 Mich. 582, a bank, with the abstract of real estate before it showing a *lis pendens* filed, loaned money on the property without any agreement or understanding for subrogation. It was a stranger to the title, and mere volunteer. An existing mortgage was paid and discharged by the mortgagor with the money procured from the bank or otherwise. The bank claimed it was entitled to subrogation to the rights of the mortgagee of the mortgage which had been paid and to precedence over the rights of those seeking to foreclose a purchase money lien against the property. This case holds that a mere stranger to the title who voluntarily advances money to help a fraudulent holder of real estate pay a mortgage placed by him thereon has equities more appealing to the conscience of the court than those of the real but defrauded owner of the real estate with notice of whose rights the money was advanced. This case stands alone. It violates all the principles underlying the cases involving legal or conventional subrogation in England and America. It is not a precedent to be followed, but an accident to be avoided.

For the reasons above stated, I concur with Mr. Justice Sharpe.

Butzel, J. (*dissenting*). About three months prior to the expiration of the equity of redemption in the foreclosure proceedings brought by the Rockwood State Bank on its two mortgages, the mortgagor obtained the services of a friend to intercede with the agent of plaintiffs for the purpose of secur-

ing a loan with which to pay the two mortgages. The $16,000 loan was obtained from plaintiffs who received a mortgage on the property in question together with an adjoining piece of property and an additional third parcel. When the new mortgage was executed, plaintiffs' agent went to the cashier's window of the bank in which plaintiffs had their funds, and checks made out to pay the parties in the transaction included one to the Rockwood State Bank for the amount required to redeem from the foreclosure of its mortgages. Nothing whatever was said at the time in reference to the mortgage to the State Savings Bank of Carleton. We thus have a case of funds being loaned, at the request of the mortgagor, for the express purpose of saving the equity of redemption and part of the money being actually used to redeem from the foreclosure. Under such circumstances, plaintiffs were not volunteers. We so held in *Leser* v. *Smith,* 219 Mich. 509; *Smith* v. *Sprague,* 244 Mich. 577, and *Walker* v. *Bates,* 244 Mich. 582. In *Smith* v. *Sprague, supra,* we said:

"The purpose served by the evidence that plaintiff paid the money to satisfy the mortgage at the instance, promise, and request of Mr. Sprague, one of the tenants by the entireties, is that it shows that plaintiff was not a mere volunteer. 25 R. C. L. p. 1338. And it is a sufficient showing."

The rule as thus laid down in the Michigan cases is that also of a majority of States. See 70 A. L. R. 1396.

Had plaintiffs not furnished the money to pay off the mortgages to the Rockwood bank, the Carleton bank would either have been obliged to redeem from the foreclosure of the two mortgages or else lose its security. By making the loan, the plaintiffs greatly

improved the position of the Carleton bank and thus preserved its second mortgage security which otherwise would have been lost through the expiration of the equity of redemption on the foreclosure of the Rockwood bank mortgages.

It is claimed that because plaintiffs' mortgage for $16,000 incumbered not only the parcel covered by the Carleton bank mortgage, but also additional realty owned by Stoflet and wife, that the Carleton bank was therefore deprived of an opportunity to move against the additional realty to satisfy any deficiency judgment granted it against Stoflet and wife. We believe the contention is wholly unsound. The additional properties were not covered by the Carleton bank mortgage and Stoflet and wife had at all times the right to sell or incumber their other property and receive in exchange a substituted *res*. The fact that an amount in excess of that required to redeem the two Rockwood Bank mortgages was loaned on additional security can in no way harm the Carleton bank as plaintiffs are only entitled to be subrogated to the extent that the loan was used to pay off the mortgages to the Rockwood bank. As we held in *Walker* v. *Bates, supra:*

"It is immaterial to the plaintiff and wasn't wronging him any, to just simply change from the Highland Park Bank to the Commonwealth Bank."

This view has been adopted in numerous jurisdictions. See 70 A. L. R. 1405.

Notwithstanding subrogation is allowed, the decree should provide for marshalling the securities on the foreclosure sale of plaintiffs' mortgage. The two additional parcels in plaintiffs' mortgage should be sold first and recourse to the parcel covered by

the Carleton Bank mortgage should be had only to the extent that plaintiffs' obligation is not satisfied by the sale of the other parcels.

The decree of the trial court should be reversed and the case remanded for the purpose of ascertaining the correct amount due and entering a decree in accordance with this opinion. Appellants should recover costs against defendant-appellee German.