GRAVES v AMERICAN ACCEPTANCE MORTGAGE CORPORATION

Docket No. 215141. Submitted December 8, 2000, at Detroit. Decided May 15, 2001, at 9:00 A.M.

Eileen V. Graves brought an action in the Oakland Circuit Court against Steve A. Diaz, American Acceptance Mortgage Corporation, and Boulder Escrow, Inc., to foreclose on a lien against realty of which Diaz was legal owner and in which Boulder Escrow, by assignment from American Acceptance, held a security interest pursuant to a mortgage. While married, Graves and Diaz had purchased the realty on land contract. Under their judgment of divorce, the realty had been awarded to Diaz subject to a lien in favor of Graves for debts Diaz owed to Graves. Diaz had defaulted on the land contract, obtained a mortgage loan from American Acceptance, and used the loan proceeds to pay off the land contract and obtain legal title to the realty. Graves had recorded her judgment lien before American Acceptance recorded the mortgage. Graves moved for summary disposition, arguing that her judgment lien, because it was recorded before the mortgage, took priority over any interest held by American Acceptance and Boulder Escrow. American Acceptance and Boulder Escrow moved for summary disposition, arguing that the purchase money mortgage took priority over the judgment lien. The court, Alice L. Gilbert, J., granted Graves' motion and denied American Acceptance and Boulder Escrow's motion. American Acceptance and Boulder Escrow appealed.

The Court of Appeals *held*:

As a matter of public policy that seeks to facilitate third-party financing of real estate sales, a purchase money mortgage takes priority over earlier creditors' interests, notwithstanding that the earlier interests were duly recorded. Thus, in this case, the mortgage obtained by Diaz to pay off the land contract was a purchase money mortgage that is superior to Graves' judgment lien.

Reversed and remanded for entry of summary disposition for American Acceptance and Boulder Escrow.

Mortgages — Purchase Money Mortgages — Priority Over Earlier Recorded Judgment Liens.
   A purchase money mortgage takes priority over earlier creditors' interest in the realty, including a judgment lien recorded before the mortgage.

*Barron and Rosenberg, P.C.* (by *Ronald W. Barron* and *Andrew W. Mayoras*), for Eileen V. Graves.

*Michael J. Hagerty,* for American Acceptance Mortgage Corporation and Boulder Escrow, Inc.

Before: Sawyer, P.J., and Jansen and Gage, JJ.

Gage, J. This case involves a priority dispute between a lienholder and a mortgagee. Defendants appeal as of right from an order granting plaintiff summary disposition pursuant to MCR 2.116(C)(10). We reverse and remand.

I

In 1987, plaintiff Eileen V. Graves and her husband, defendant Steve A. Diaz, executed a land contract for the purchase of 72 West End in Waterford. Plaintiff and Diaz divorced in 1994. The June 9, 1994, judgment of divorce ordered the following with respect to 72 West End:

> [T]he real property located at 72 West End, Waterford, Michigan, shall be awarded to the Plaintiff [Diaz] subject to a lien in favor of the Defendant [Graves] in the amount of seven (7%) percent interest per annum payable within one year from March 30, 1994, for the following debts which Plaintiff owes to the Defendant: 1) Any child support arrearages; 2) Rental arrearages in the amount of Nine Hundred ($900.00) Dollars relative to the property at 1048 La Salle, Waterford, Michigan; 3) Any arrearages owed on the land contract relative to 1048 LaSalle, Waterford, Michigan,

as of March 31, 1994. These arrearages amount to Seven Thousand Five Hundred Four ($7,504.00) Dollars. That the Plaintiff shall assume any outstanding obligation thereon and hold the Defendant harmless therefrom.

At 8:54 A.M. on September 7, 1994, plaintiff recorded her lien.

Later on September 7, 1994, Diaz entered a mortgage agreement with defendant-appellant American Acceptance Mortgage Corporation. With the mortgage proceeds, Diaz, who had defaulted on his payments under the 1987 land contract, paid off the amount due under the contract, thus obtaining legal title to 72 West End. A warranty deed transferred the property to Diaz "subject to acts or admissions of grantee since 8-25-87 being the date of a certain land contract in fulfillment of which this deed is given."[1] American Acceptance recorded Diaz' mortgage on October 5, 1994, and later assigned the mortgage to defendant/counterplaintiff-appellant Boulder Escrow, Inc., which recorded the assignment on April 13, 1995.

On January 12, 1996, plaintiff filed a complaint against Diaz, American Acceptance, and Boulder to foreclose on her judgment lien, alleging that Diaz owed her more than $15,000.[2] On July 17, 1996, Boulder filed a cross-claim against Diaz for defaulting on his mortgage obligation,[3] and a counterclaim against

---

[1] The deed was executed on September 13, 1994, and recorded on October 6, 1994.

[2] Diaz apparently had failed to attend a November 22, 1995, hearing regarding a motion by plaintiff to enforce her judgment lien. The trial court therefore ordered that plaintiff "shall be permitted to enforce her lien against Defendant Steve Diaz' real property by foreclosing upon 72 West End."

[3] On April 2, 1997, a default judgment of foreclosure was entered against Diaz, who is not a party to this appeal.

plaintiff asserting the priority of its mortgage interest over plaintiff's judgment lien. Plaintiff moved for summary disposition. American Acceptance and Boulder (hereinafter referred to collectively as "defendants") also moved for summary disposition.

The trial court found that as a matter of law plaintiff's lien had priority because plaintiff recorded her lien before the mortgage was recorded, thereby giving defendants constructive notice of the lien.[4] Accordingly, the trial court granted plaintiff summary disposition pursuant to MCR 2.116(C)(10) and denied defendants' motion.

II

Defendants contend that the trial court erred in granting plaintiff summary disposition because their purchase money mortgage has priority over plaintiff's prior divorce judgment lien, irrespective of who filed first. We review de novo a trial court's summary disposition ruling. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). In reviewing a motion granted under MCR 2.116(C)(10), we consider the entire lower court record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists, or whether the moving party is entitled to judgment as a matter of law. *Smith v Globe Life Ins Co*, 460 Mich

---

[4] Boulder foreclosed on Diaz' mortgage and sold 72 West End by the time the trial court, Alice L. Gilbert, J., granted plaintiff summary disposition. In her opinion and order, Judge Gilbert also found that Boulder's sale of the West End property violated a provision of the April 2, 1997, default judgment, entered by predecessor Judge Gene Schnelz, which "ordered and found that the sale of the West End Property shall be held immediately subsequent to the Court's determination as to the priority of the parties."

446, 454-455; 597 NW2d 28 (1999). In this case, the material facts appear uncontested. Accordingly, we must determine as a matter of law whether plaintiff's lien on Diaz' interest in the land contract has priority over defendants' mortgage interest.

III

A holder of an interest in real estate who first records his interest generally has priority over subsequent purchasers. See MCL 565.29, which provides in relevant part as follows:

> Every conveyance[5] of real estate within the state hereafter made, which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser in good faith and for a valuable consideration, of the same real estate or any portion thereof, whose conveyance shall be first duly recorded.

See also MCL 565.25(4) (providing that "[a]ll subsequent owners or encumbrances shall take subject to the perfected liens, rights, or interests"). It is well established, however, that a promptly recorded purchase money mortgage takes priority over earlier creditors' interests, notwithstanding that the earlier interests were duly recorded. *Fecteau v Fries*, 253 Mich 51, 53-54; 234 NW 113 (1931).[6]

---

[5] MCL 565.35, with certain exceptions irrelevant in this case, defines "conveyance" as "embrac[ing] every instrument in writing, by which any estate or interest in real estate is created, aliened, mortgaged or assigned; or by which the title to any real estate may be affected in law or equity . . . ."

[6] The Supreme Court in *Fecteau, supra* at 54, quoted 25 ALR 83, § 4, p 92, for the following proposition:

> Where one who has conveyed before he had title gives a purchase-money mortgage upon acquiring the title, the cases agree

A purchase money mortgage, whether or not recorded has priority over any mortgage, lien,[7] or other claim that attaches to the real estate but is created by or arises against the purchaser-mortgagor prior to the purchaser-mortgagor's acquisition of title to the real estate. [Restatement Property, 3d, Mortgages, § 7.2(b), p 458.]

Under this section the vendor's purchase money mortgage is senior to any previous judgment liens that arise against the purchaser-mortgagor. This is true even though a judgment attaches as a lien to the judgment debtor's after-acquired real estate and the vendor takes the mortgage with actual knowledge of the judgment. . . . This rule applies even if the mortgage is not executed simultaneously with the deed to the mortgagor, so long as the mortgage and the conveyance of title are intended to be part of one transaction. . . . Moreover, although the purchase money mortgage must be recorded in order to protect the mortgagee against *subsequent* interests that arise through the purchaser-mortgagor, such recording is unnecessary to protect against claims against mortgagor that antedate the purchase money mortgage.

---

that the title subsequently acquired does not inure to the benefit of the prior grantee or mortgagee, as against the holder of the purchase-money mortgage.

[7] Even prior federal tax liens are subordinated to a purchase money mortgagee's interests.

Decisional law has long established that a purchase-money mortgagee's interest in the mortgaged property is superior to antecedent liens prior in time, see *United States v New Orleans R Co*, 12 Wall 362, 20 L Ed 434 (1871), and, therefore, a federal tax lien is subordinate to a purchase-money mortgagee's interest notwithstanding that the agreement is made and the security interest arises after notice of the tax lien. The purchase-money mortgage priority is based upon recognition that the mortgagee's interest merely reflects his contribution of property to the taxpayer's estate and therefore does not prejudice creditors who are prior in time. [*Slodov v United States*, 436 US 238, 258, n 23; 98 S Ct 1778; 56 L Ed 2d 251 (1978).]

> Because this long-established rule makes it unnecessary for a purchase money lender to examine for preexisting judgments and other liens against the purchaser-mortgagor, it reduces title risk in connection with such transactions and thus encourages purchase money financing by vendors. [Restatement Property, 3d, Mortgages, § 7.2, comment b, p 459 (emphasis in original).][8]

A purchase money mortgage constitutes a mortgage "that a buyer gives the seller, when the property is conveyed, to secure the unpaid balance of the purchase price." Black's Law Dictionary (7th ed), p 1028. Michigan courts have regarded any mortgage whose proceeds were used to acquire title to property as a purchase money mortgage, regardless of whether the vendor or a third party such as a financial institution is the mortgagee. *Van Stee v Ransford*, 346 Mich 116, 119; 77 NW2d 346 (1956); *Rossman v Marsh*, 287 Mich 580, 582; 283 NW 696 (1939), aff'd on reh 287 Mich 720; 286 NW 83 (1939). See also Restatement Property, 3d, Mortgages, § 7.2, p 458, defining "purchase money mortgage" as including "a mortgage given to a vendor of the real estate or to a third party lender to the extent that the proceeds of the loan are used to . . . acquire title to the real estate."

In this case, the June 1994 judgment of divorce granted plaintiff a lien on 72 West End to the extent of Diaz' then existing interest in the property. At the time of the judgment lien's creation, Diaz, the land contract vendee, possessed equitable title in 72 West End. *Bowen v Lansing*, 129 Mich 117, 118-119; 88 NW

---

[8] Although the quoted discussion specifically referred only to purchase money mortgages provided by vendors, the Restatement subsequently makes clear that "the same priority preference [extends] to third party purchase money lenders." *Id.* at 460.

384 (1901); *Tidwell v Dasher*, 152 Mich App 379, 386; 393 NW2d 644 (1986). Thus, plaintiff had a lien to the extent of Diaz' equitable interest in the property. Diaz did not obtain legal title to 72 West End until 1996 when he satisfied his obligation under the land contract. The mortgage Diaz granted American Acceptance constituted a purchase money mortgage because Diaz, who had defaulted on his land contract payments, utilized the proceeds of this mortgage to obtain legal title to 72 West End by paying off his land contract vendors. Accordingly, notwithstanding that plaintiff filed her judgment lien before execution of the Diaz-American Acceptance mortgage, the purchase money mortgage, pursuant to which Diaz secured legal title to the property, obtains priority over plaintiff's previously filed judgment lien, which "ar[o]se[] against the purchaser-mortgagor [Diaz] prior to the purchaser-mortgagor's acquisition of title to the real estate." Plaintiff's judgment lien "could not insert itself between the deed to [Diaz] and the purchase-money mortgage by [Diaz] to [American Acceptance]."[9] *Fecteau, supra* at 53.

IV

While no published Michigan case has addressed the priority of a purchase money mortgage under circumstances identical or similar to those here involved, i.e., where a prior judgment lien already has attached to the purchase money mortgagor's equitable

---

[9] We note that the parties do not dispute on appeal that Diaz' receipt of a deed to 72 West End and the execution of the American Acceptance-Diaz mortgage constituted one transaction. *Hammel v First Nat'l Bank of Hancock*, 129 Mich 176, 177; 88 NW 397 (1901).

interest in the property at the time the purchase money mortgage proceeds were utilized to secure legal title to the involved property, we note the following cases from other jurisdictions that echo the logic behind our reasoning in this case.

*Wermes v McCowan*, 286 Ill App 381; 3 NE2d 720 (1936), involved a dispute between a prior lienholder and a subsequent purchase money mortgagee. In January 1931, two judgment liens were obtained by creditors of McCowan, who, with his wife, had entered into a contract to purchase a parcel of land and begun making payments on the balance of the purchase price. In August 1931, McCowan and his wife obtained $3,000 from Wermes, which the McCowans utilized to pay off the remaining balance of the real estate contract, and "executed to [Wermes] their notes for $3,000, secured by trust deed upon said lot." *Id.* at 383. The Illinois Court of Appeals found that the McCowan-Wermes mortgage constituted a purchase money mortgage because its proceeds went toward securing legal title to the real estate.[10] The court rejected, as follows, the creditors'

---

[10] More specifically, the court stated the following with respect to the mortgage's status as a purchase money mortgage:

*We consider the true test as to when a mortgage is a purchase-money mortgage, is not whether it is executed to the vendor, but whether the proceeds are to be used to apply on the purchase price.* The rule as generally stated, is that, to give a purchase-money mortgage a precedence, it must have been executed simultaneously, or at the same time, with the deed of purchase. The reason usually assigned for this doctrine is the technical one of the mere transitory seisin of the mortgagor, rather than the superior equity which the mortgagee has, to be paid the purchase money of the land before it shall be subjected to other claims against the purchaser. . . . [T]he real test is not whether the deed and mortgage were in fact executed at the same instant, but whether they were parts of one continuous transaction, and so intended to be by the

arguments that they held prior interests in the property:

> With reference to appellants' [the creditors'] second point urged, that their judgments were liens on McCowan's equitable interest in the lot under the contract of sale, there is no dispute. However, their rights under their liens would have been no greater than McCowan's rights under the sales contract. The only interest or right that McCowan had under such contract was the equitable right to enforce the same providing he had performed it on his part. *Thus we see that appellants, under such a lien, would find the same subject to the payment of the unpaid purchase price upon said lot.* Until payment of the purchase price, it is manifest that specific performance could not be had. Therefore appellants' rights are in no way injured or impaired. [*Id.* at 385 (emphasis added).]

Consequently, the court held that the purchase money mortgage was entitled to priority over the creditors' earlier judgment liens. *Id.*

A more recent case involving facts very similar to the instant case also recognized the priority of a

---

parties, so that the two instruments should be given contemporaneous operation in order to promote and carry out the intention of the parties.

We thus find the various authorities on the question of purchase-money mortgages falling into two groups: The one, based upon the position that the execution of the deed and the mortgage being simultaneous acts, the title to the land does not for a single moment rest in the purchaser, but merely passes through his hands and vests in the mortgagee without stopping in the purchaser, and that during such instantaneous passage, the judgment lien cannot attach to the title; while the other is disposed to consider the superior equity which the mortgagee might be said to have for the purchase money which he has advanced. This state has apparently adopted the theory of transitory seisin. *However, under either position the result is the same, and purchase-money mortgages given precedence over existing judgments against the mortgagor.* [*Id.* at 386-387 (emphasis added).]

purchase money mortgage. *Liberty Parts Warehouse, Inc v Marshall Co Bank & Trust*, 459 NE2d 738 (Ind App, 1984), involved the following circumstances:

> In 1976 William and Geraldine Hoppe executed a land contract for the purchase of the subject real estate from Effie Wise. In May, 1980, the marriage of William and Geraldine dissolved and they agreed to hold the real estate as tenants in common. On October 10, 1980, Liberty obtained a judgment against William, which was duly recorded. On December 3, 1981, William obtained a loan from the Bank which was secured by a mortgage on the real estate. The Bank issued a check to Wise for the balance due on the land contract. Wise deeded the real estate to William and Geraldine. [*Id.* at 739.]

The Indiana Court of Appeals rejected Liberty's assertion that its lien constituted a prior interest because the bank's subsequent loan "was merely a refinancing of the initial obligation."

> *While we agree that the execution of the land contract between Wise and the Hoppes constituted a purchase and sale of the real estate . . . that proposition is unrelated to the question whether the Bank's mortgage was a purchase money mortgage.* By executing the land contract with Wise, the Hoppes acquired equitable title to the real estate. *However, the relevant inquiry in determining the nature of the Bank's mortgage is its role in [Hoppe]'s acquisition of legal title to the real estate.*
>
> A purchase money mortgage is one which is given as security for a loan, the proceeds of which are used by the mortgagor to acquire legal title to the real estate. When the deed and mortgage are executed as part of the same transaction the purchaser does not obtain title to the property and then grant the mortgage; rather, he is deemed to take the title already charged with the encumbrance. Because there is no moment at which the judgment lien can attach to the property before the mortgage of one who advances

purchase money, the prior judgment lien is junior to the purchase money mortgage. Thus, the tests employed in determining whether a mortgage is a purchase money mortgage are whether the proceeds are applied to the purchase price, and whether the deed and mortgage are executed as part of the same transaction.

*In this case it is clear that proceeds of the Bank's loan to [Hoppe] were used by him to acquire legal title to the subject real estate, and that the deed and mortgage were executed as part of the same transaction. Thus, the Bank holds a purchase money mortgage on the real estate and the trial court correctly gave the Bank priority over Liberty* . . . . [*Id.* (emphasis added).]

See also *Farmers' Loan & Trust Co v Denver, L & G R Co*, 126 F 46 (CA 8, 1903) (reasoning that a mortgage jointly given by the legal title holder of land and the holder of an equitable interest in the land, a portion of the proceeds of which went toward satisfying the outstanding purchase price of the land, was a purchase money mortgage that had priority over liens on the equitable owner's interest in the land).

We agree with these cases that where, as here, a land contract vendee grants a mortgage of his interest in real estate and with the mortgage proceeds pays off his debt to the land contract vendor, the mortgage constitutes a purchase money mortgage because it enabled the vendee/mortgagor to acquire legal title to the property, Restatement Property, 3d, Mortgages, § 7.2, p 458, which the vendee did not otherwise possess.[11] Although defendants' purchase money mort-

---

[11] Our review of decisions from other states revealed two cases that reached contrary conclusions under circumstances similar to those here involved. See *C & L Lumber & Supply, Inc v Texas American Bank/Galeria*, 110 NM 291, 296; 795 P2d 502 (1990) (concluding that "under New Mexico law a mortgage executed for the purpose of paying off a land sales contract is itself not a purchase-money mortgage"

gage had priority over plaintiff's prior judgment lien, it did not, as plaintiff argues, extinguish her lien.

V

We conclude that the trial court incorrectly granted plaintiff summary disposition and denied defendants summary disposition, because the court failed to accord defendants' purchase money mortgage interest the priority to which it is entitled by law. We further note that, to the extent the trial court indicated its belief that "principles of equity and fairness mandate that Plaintiff's interest in the property not be extinguished," the court apparently failed to consider the public policy behind recognizing the priority of purchase money mortgages:

> Because third party lending is the dominant source of purchase money land financing in this country, a rule which facilitates such lending is especially beneficial to the national real estate economy. Applying the rule to benefit

because, "[t]o hold that such a refinancing mortgage was a purchase-money mortgage, entitled to priority over all other liens [that already had attached to the vendee's equitable interest under the land contract], would ignore both the earlier attachment of these liens and the possible inequity in subordinating them to the refinancing agreement"); *Lorenz Co v Gray*, 136 Or 605, 615; 298 P 222 (1931) (finding that if a purchaser of land under a land contract "is already indebted to the vendor for the price . . . and then borrows money from a third person for the purpose of discharging this debt, and gives the latter a mortgage on the land, this mortgage is not entitled to the standing of a purchase-money mortgage"). To the extent that these cases stand for the proposition that no mortgage whose proceeds satisfy the mortgagor's obligation to his land contract vendee can qualify as a purchase money mortgage, we decline to follow these cases because we find that the New Mexico and Oregon courts failed to (1) recognize the significant fact that only through the mortgages did the land contract vendees obtain legal title to the properties, and (2) appropriately consider or weigh in their decisions the public policies behind affording purchase money mortgages priority over the earlier lienholders' interests.

third party lenders is plainly fair. While it is true that such lenders, unlike vendors, do not give up ownership of specific real estate, they nevertheless part with money with the expectation that they will have security in that real estate. Without this advance of money, the purchaser-mortgagor would never have received the property and the other claimants would never have had the opportunity to satisfy their claims from such a convenient source. As in the vendor purchase money context, this section seeks to avoid conferring a windfall on those claimants. [Restatement Property, 3d, Mortgages, § 7.2, comment b, p 460.]

We do not view our recognition of the priority of the instant purchase money mortgage, which enabled Diaz to obtain legal title to 72 West End, as an inequitable result.[12]

We reverse the decision of the trial court and remand for entry of an order granting defendants summary disposition pursuant to MCR 2.116(C)(10). We do not retain jurisdiction.

---

[12] We also note that in light of our determination that defendants possessed the priority interest in 72 West End, we need not consider whether Boulder's sale of the property violated the terms of the April 2, 1997, trial court order. See n 4, *supra*. We also need not address defendants' contention that the doctrine of equitable subordination applies under the circumstances of this case.