**BEDNAROWSKI AND MICHAELS DEVELOPMENT, LLC., and Citizens Bank, Plaintiffs,**

v.

**John C. WALLACE, et al, Defendants.**

No. 2002–60181.

United States District Court, E.D. Michigan.

June 16, 2003.

Kurt E. Riedel, Colleen S. Pacler, Plunkett & Cooney, Mount Clemens, MI, for plaintiffs.

Joseph Falcone, Joseph Falcone Assoc., Southfield, MI, Thomas P. Cole, Department of Justice, Tax Division, Washington, DC, for defendants.

**OPINION AND ORDER OF THE COURT GRANTING DEFENDANT USA'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

BATTANI, District Judge.

## I. INTRODUCTION

Before the Court are Plaintiffs' and Defendant United States of America's Cross–Motions for Summary Judgment. Plaintiffs Bednarowski & Michaels Development (hereinafter "Bednarowski") and Citizens Bank seek to quiet title to a parcel of real property in Shelby Township (hereinafter "the Property"), and argue in this motion that they should be awarded that title as a matter of law. Specifically, Plaintiffs assert that Bednarowski's title (in which Citizens Bank has a mortgage interest) is unencumbered by the USA's tax lien on the Property because it gained the priority of a preexisting mortgage on the Property. The USA responds in its cross-motion that Bednarowski's title is junior to the government's tax lien, so that the USA has title to the Property. The Court agrees with the USA that Plaintiffs' interests in the Property is encumbered by the tax lien. The Court also agrees with Defendant that the tax lien has priority over Citizens Bank's mortgage despite the fact that Citizens Bank's mortgage is a purchase money mortgage.

## II. STANDARD OF REVIEW

F.R.C.P. 56 states that summary judgment "shall be rendered forthwith if the pleadings, [etc.,] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ.P.56. There is no genuine issue of material fact if there is no factual dispute that could affect the legal outcome on the issue. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In other words, the movant must show that it would prevail on the issue even if all factual disputes are conceded to the non-movant. Additionally, for the purposes of deciding on a motion for summary judgment, a court must draw all inferences from those facts in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III. BACKGROUND

In January 1995, Defendants John and Dawn Wallace purchased the Property for $40,000. In 1999, the Wallaces executed a mortgage in favor of Michigan National Bank to secure loans, including a $150,000 line of credit. In January 2001, the IRS made a tax assessment against the Wallaces, and a tax lien was recorded on the Wallaces' property on April 12, 2001. Meanwhile, the Wallaces decided to sell a

portion of the Property to Bednarowski, who, in turn, sought Citizens Bank's help in financing the purchase. Citizens Bank agreed to receive a mortgage on the condition that Bednarowski find a way to discharge the 1999 mortgage. These terms were memorialized in a Purchase Agreement signed on October 29, 2001, and accepted on October 31, 2001. Accordingly, in November 2001, Bednarowski finalized the agreement with Standard Federal Bank, the successor by merger to Michigan National Bank, to pay off the 1999 mortgage with a $238,992.76 payment. Shortly thereafter, the Wallaces sold about 2/3 of the Property to Bednarowski, who executed a mortgage on the Property in favor of Citizens Bank for a $288,000 loan. The USA claims title to the Property by virtue of its tax lien, which predated the sale to Bednarowski. Plaintiffs contend that although they acquired their interest in the Property after the USA had acquired its tax lien, they can assume the priority of the 1999 mortgage to gain precedence over the USA's title. The instant cross-motions ask the Court to quiet title with respect to the claims made by Plaintiffs and the USA.

## IV. DISCUSSION

### A. Plaintiffs do not have priority through equitable subrogation because Bednarowski was a volunteer when it bought the Property

█ Plaintiffs acknowledge that their purchase of the Property post-dated the federal tax lien, but argue that they are subrogated to rights of Standard Federal Bank/Michigan National Bank, and that their interest is therefore prior to the tax lien. Plaintiffs observe that under the Internal Revenue Code, the Court must look to Michigan law to determine whether subrogation applies here. Plaintiffs contend that, under Michigan law, they were subrogated to the first mortgage-holder's rights

when they paid off the first mortgage. Under the Internal Revenue Code, a federal tax lien "shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof... has been filed by the Secretary." 26 U.S.C. § 6323(a). Thus, "priority of the federal tax lien provided by 26 U.S.C. § 6321 as against liens created under state law is governed by the common-law rule-the first in time is the first in right." *United States v. Pioneer Am. Ins. Co.*, 374 U.S. 84, 87, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963).

There is an important qualification, however, to the first-in-time rule: "Where, under local law, one person is subrogated to the rights of another with respect to a lien or interest, such person shall be subrogated to such rights for purposes of any lien imposed by section 6321." 26 U.S.C. § 6323(i)(2). The Court must therefore look to Michigan law to determine whether Plaintiffs' interests are subrogated to the holder of the 1999 mortgage.

> Equitable subrogation is a legal fiction which permits a party who satisfies another's obligation to recover from the party 'primarily liable' for the extinguished obligation... The doctrine rests on the equitable principle that one who, in order to protect a security held by him, is compelled to pay a debt for which another is primarily liable, is entitled to be substituted in the place of and to be vested with the rights of the person to whom such payment is made, without agreement to that effect.

*In re Air Crash Disaster*, 86 F.3d 498, 549 (6th Cir.1996) (internal citations omitted).

█ The USA asserts that Plaintiffs cannot claim subrogation because they paid off the mortgage voluntarily. A key requirement for equitable subrogation is that the party seeking subrogation was

"compelled" to pay the debt in question; in other words, that the party was not a volunteer. *Id.; Hartford Accident & Indem. Co. v. Used Car Factory, Inc.*, 461 Mich. 210, 215, 600 N.W.2d 630 (1999) (internal citations omitted). The USA insists that Plaintiffs paid off the 1999 mortgage voluntarily because the purchase of the Property was a voluntary transaction, so subrogation is not available to prioritize Plaintiffs' interest over the tax lien.

There is no dispute that Bednarowski paid off the Wallace's 1999 mortgage held by Standard Federal Bank/Michigan National Bank. The only question, therefore, is whether Bednarowski was somehow "compelled" to make the payment, or whether it was a volunteer and therefore ineligible to claim subrogation. Bednarowski claims that it was not a volunteer because paying off the 1999 mortgage was a condition precedent to obtaining a new mortgage from Citizens Bank. This argument, however, does not comport with the examples of entities that have been "compelled to pay a debt" and were therefore eligible for subrogation. *Air Crash*, 86 F.3d at 549. In *Hartford Accident*, 461 Mich. at 218, 600 N.W.2d 630, for example, an insurer was subrogated to the rights of its insured's employee after discharging a contractual duty to pay the employee's claim. *See also Auto–Owners Ins. Co. v. Amoco Prod. Co.*, 468 Mich. 53, 658 N.W.2d 460, 463 (2003) ("When an insurance provider pays expenses on behalf of its insured, it is not doing so as a volunteer"). Similarly, in *Harley J. Robinson Trust v. Ardmore Acres, Inc.*, 6 F.Supp.2d 640 (E.D.Mich.1998), to which Plaintiffs cite, the court considered whether a guarantor for a loan could be subrogated to the rights of the lender. In that case, Comerica loaned $2.4 million to the defendant in return for a mortgage on certain property, and the plaintiff agreed to serve as guarantor for the loan. *Id.* at 642. Two federal tax liens were recorded against the defendant, after which the defendant defaulted on Comerica's loan. The plaintiff paid off the loan pursuant to the guaranty agreement and received Comerica's mortgage, and the court ruled that the plaintiff therefore became equitably subrogated to Comerica's rights. *Id.* at 643, 645.

In these cases, the parties seeking subrogation were not volunteers because they did not pay off the obligations freely, but rather paid them off pursuant to preexisting agreements (i.e., insurance or guaranty contracts). In the case at bar, in contrast, Bednarowski paid off the 1999 mortgage for the purpose of gaining the security interest; Bednarowski had no relationship with the 1999 mortgage-holder until payoff itself. A virtually identical position was presented in *Lentz v. Stoflet*, 280 Mich. 446, 451, 273 N.W. 763 (1937). In *Lentz*, the plaintiff paid off the defendant's 1919 and 1923 mortgages in return for a mortgage of its own in 1930. *Id.* at 448, 273 N.W. 763. A competing mortgage had been placed on the property in 1929, and the plaintiff sought to obtain the priority of the 1919 and 1923 mortgages through equitable subrogation. The Michigan Supreme Court denied this request on the grounds that the plaintiff paid off the 1919 and 1923 mortgages as a volunteer, rather than pursuant to some preexisting arrangement or interest. *Id.* at 451, 273 N.W. 763. In a more recent case, the Bankruptcy Court for the Western District of Michigan held that a bank that obtained a mortgage by paying off a prior mortgage could not equitably subrogate itself to the prior mortgage because it was a volunteer. *In re Lewis*, 270 B.R. 215, 216–17 (Bkrtcy. W.D.Mich.2001). The Court finds this case is analogous to *Lentz* and *Lewis*, and denies Plaintiffs' request for equitable subrogation.

■ At oral argument, Plaintiffs implied that, although their actual purchase came after the tax lien was recorded, the agreement that contractually obligated Plaintiffs to pay off the mortgage predated their access to knowledge of the lien. The Court is sympathetic to this position, but it is of no consequence. The tax lien was filed in April and the Purchase Agreement was not signed until October (although a previous agreement was attempted in August). Plaintiffs have not presented any evidence that the lien was not recorded, they only argue that they did not learn of it. The Court further notes that the date of the commitment for title insurance was July 2001, well before the signing of the Purchase Agreement. No evidence was presented that any subsequent title search was completed. The Court cannot merely assume that the lien was somehow "in transit" for over four months, and that Plaintiffs were therefore justifiably ignorant of it.

Plaintiffs' other cited caselaw does not change this conclusion. For example, Plaintiffs cite to *Mort v. United States*, 86 F.3d 890, 894 (9th Cir.1996), to establish that they are not volunteers, but *Mort* relied on a more restrictive definition of volunteer supplied by California law. Specifically, the *Mort* court read California law as allowing subrogation for a "person who lends money to pay off an encumbrance on property and secures the loan with a deed of trust on that property," *id.;* this is clearly contradictory to Michigan law as pronounced in *Lentz* and *Lewis.* Plaintiffs also argue that the government would unjustly receive a windfall if the Court denied subrogation here, because the USA's lien would have its priority elevated with the 1999 mortgage's priority disappearing. *See Dietrich Indus., Inc. v. United States,* 988 F.2d 568, 573 (5th Cir. 1993). Plaintiffs' windfall argument is not persuasive, however, because allowing subrogation would give Plaintiffs the windfall;

further, the logic of Plaintiffs' argument would have applied just as well in *Lentz* or *Lewis,* and both of those courts denied subrogation. Finally, Plaintiffs cite to *United States v. Baran,* 996 F.2d 25, 29 (2nd Cir.1993), but *Baran* never discussed the volunteer issue. In conclusion, the Court denies Plaintiffs equitable subrogation argument.

**B. Citizens Bank's Mortgage gets priority over the tax lien as a purchase money mortgage under federal law**

Both parties agree that Citizens Bank has a purchase money mortgage on the property, but disagree over whether such a mortgage gets priority over the tax lien. Plaintiffs argue that the current state of Michigan law favors their position. Specifically, Plaintiffs contend that a Michigan Appeals Court decision, *Graves v. American Acceptance Mortgage Corp.,* 246 Mich. App. 1, 630 N.W.2d 383 (2001), held that purchase money mortgages always have highest priority. Plaintiffs acknowledge that the Michigan Supreme Court later overruled *Graves,* but observe that the Michigan Supreme Court has since vacated its overruling opinion to reconsider the case. Plaintiffs conclude that with the Supreme Court opinion vacated, the Appeals Court opinion is once again good law. The government responds that state law is unsettled as to the priority of a purchase money mortgage versus other liens and securities. The USA continues to say that the state of Michigan law is irrelevant, because priority in this case is governed by federal law, and federal law allows for no special priority for purchase money mortgages.

■■ As both parties agree, state law dictates the existence of property interests, but the priority of those interests with respect to tax liens or other portions of the tax law is an issue of federal law.

*United States v. National Bank of Commerce,* 472 U.S. 713, 722, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985); *Blachy v. Butcher,* 221 F.3d 896, 905 (6th Cir.2000). Defendant is correct that the dispute over *Graves* is moot, as the question of priority is not governed by state law. Federal law, however, does generally give priority to purchase money mortgages. The Supreme Court has held that a federal tax lien is subordinate to "a purchase-money mortgage regardless of whether the agreement was entered into before or after the filing of a tax lien." *Slodov v. United States,* 436 U.S. 238, 257–58, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978). "Decisional law has long established that a purchase-money mortgagee's interest in the mortgaged property is superior to antecedent liens prior in time ... and, therefore, a federal tax lien is subordinate to a purchase-money mortgagee's interest notwithstanding that the agreement is made and the security interest arises after notice of the tax lien." *Id.* at 1791 n. 23; *accord First Interstate Bank of Utah, N.A. v. Internal Revenue Serv.,* 930 F.2d 1521, 1523 (10th Cir.1991). This fact has recently been recognized by another court in this District. *Wilson v. Wilson,* No. 02–CV–70833, 2002 WL 31545995, at *8 (E.D.Mich. Oct. 21, 2002) (citing *First Interstate Bank,* 930 F.2d at 1523). Thus, the government's tax lien seems at first glance subordinate to Citizens Bank's mortgage.

The Court, however, agrees with Defendant that *Slodov* is distinguishable from the instant case because the mortgagor in *Slodov* was the taxpayer himself, whereas here, the mortgagor is Bednarowski, a separate purchaser. Defendant insists that this is a crucial distinction between *Slodov* and the instant case because of the rationale underlying the priority given to purchase money mortgagees. In a typical purchase money mortgage situation, the property-buyer receives a loan from the lender to buy property, and secures that loan by granting the lender a mortgage on the purchased property. In such a scenario, the purchase of the land and the mortgage are seen as simultaneous events, so that the mortgagor obtains the land *already encumbered* by the mortgage. *United States v. New Orleans R.R.,* 79 U.S. 362, 365, 12 Wall. 362, 20 L.Ed. 434 (1870); *cited in Slodov,* 436 U.S. at 259 n. 23, 98 S.Ct. 1778. In other words, it is not the case that the mortgagor acquires the land and *then* gives a mortgage interest to the lender.

■ This chronology is critical in explaining why purchase money mortgages get priority over preexisting liens. A preexisting lien, i.e., a tax lien, encumbers whatever property the lienee thereafter acquires. Thus, when a lienee buys property, the lien automatically attaches to it. This is in contrast to a non-purchase money situation, in which the lien is the first encumbrance on the property. If the lienee subsequently gives out a mortgage on that property, the lien takes priority over the mortgage because the lien attached first. In a purchase money situation, on the other hand, the property enters the lienee's hands with the mortgage already attached, and so the lien attaches after the purchase money mortgage, even though the lien existed in time before the purchase money mortgage. Thus, the purchase money mortgage has priority over the lien, because it attached to the property before the lien. Put another way, the lien can only extend to the property actually owned by the lienee; the priority given to purchase money mortgages reflects the fact that the property comes to the mortgagor already "owned" to a certain extent (the extent of the mortgage amount) by the mortgagee. *Slodov,* 436 U.S. at 259 n. 23, 98 S.Ct. 1778 (citing *New Orleans R.R.,* 79 U.S. at 365, 12 Wall. 362; Rev. Rul. 68–57, 1968–1 C.B. 553). Therefore, the lien-

or's interest in the property is subordinate to the mortgagee's, because the lien does not encumber the portion of the property "owned" by the mortgagee.

■ The Court finds that the rationale for granting priority to purchase money mortgages does not apply in the case at bar. In the instant case, the tax lien had already attached to the Property before Plaintiffs got involved. In this way, Bednarowski acquired the Property with the lien attached. Even though the mortgage to Citizens Bank occurred simultaneously with Bednarowski's acquisition of the property, it still occurred after the tax lien had attached. Put another way, when the tax lien attached, Citizens Bank did not yet have an interest in the Property, unlike the classic purchase money mortgage situation described above. While Citizens Bank's mortgage would take priority over any tax liens imposed on Bednarowski, it does not take priority over a preexisting tax lien on Wallace that was inherited by Bednarowski in its purchase of Wallace's property. Therefore, the Court concludes that the purchase money mortgage in this case does not take priority over the tax lien.

## V. CONCLUSION

For the reasons set forth above, the Court GRANTS Defendant's Motion for Summary Judgment and DENIES Plaintiff's Motion for Summary Judgment. Specifically, the Court holds that the Property is encumbered by the tax lien, and that the tax lien has priority over Citizens Bank's mortgage.

IT IS SO ORDERED.