PALMER v. SHARP.

1. MORTGAGES—SUBROGATION—ESTOPPEL.

One H., as agent for B., advanced money to discharge a real-estate mortgage, and took as security a mortgage upon the same property. H. had acted in the same capacity for the mortgagee whose lien was discharged, and had at that time been assured by the assignee of the only mortgage which was then of record that such mortgage was paid, and would be promptly discharged; and he believed that he was acquiring for his principal, B., a first lien upon the land, none having been created since the prior transaction. *Held,* that B. was entitled to be subrogated to the rights of the mortgagee whose lien he had satisfied, and therefore to take precedence over the assignee of the original mortgage, whose misrepresentation estopped him from claiming priority as to such mortgagee.

2. SAME—FORECLOSURE.

The fact that B. had foreclosed his mortgage did not affect his right to subrogation, where such action was taken in the belief that the first mortgage had been paid.

Cross appeals from Jackson; Peck, J. Submitted January 15, 1897. Decided April 27, 1897.

Bill by Don E. Palmer, trustee, against William C. Sharp and John C. Sharp, executor of the estate of John W. Sharp, deceased, to set aside a mortgage as a cloud on complainant's title. From the decree rendered, all parties appeal. Modified.

*A. F. & F. M. Freeman* and *James A. Parkinson,* for complainant.

*Wilson & Cobb,* for defendants.

MONTGOMERY, J. This is an appeal from the circuit court for the county of Jackson, in chancery. The bill was originally filed against William C. Sharp and John

W. Sharp, and, without stating at length the pleadings, it will suffice to say that they appropriately set out all the facts, which appear to be as follows: It appears that in 1871 William C. Sharp was the owner of the 40-acre tract of land involved in this controversy. On the 28th of January of that year he executed to one Louisa A. Crossman a mortgage to secure the payment of $900 in three equal annual payments, beginning two years from the date thereof. The first two payments upon this mortgage were made, and, after the maturity of the third payment, the deceased, John W. Sharp, father of the defendant William C. Sharp, advanced the money to pay the balance remaining unpaid upon the Crossman mortgage, and took an assignment thereof. On the 4th of September, 1884, William C. Sharp secured another loan upon the premises from one Amy F. Howland, and executed to her a mortgage of $1,000, which was duly recorded. At the time that this mortgage was taken, one Timothy B. Halliday acted as agent of Miss Howland in making the loan, and, before making the loan, conferred with John W. Sharp with reference to the Crossman mortgage, and was assured by him that the Crossman mortgage had been paid, and that he would, on his next visit to Jackson, discharge the same of record. Relying upon this assurance and promise, Halliday made the loan in behalf of Miss Howland. The Howland mortgage matured, and $800 thereof remained unpaid. On the 5th of January, 1889, defendant William C. Sharp sought and obtained a loan from Mary J. Blanchard, deceased, executing as security a mortgage upon the same property. Mrs. Blanchard intrusted the business to the same agent who had represented Miss Howland, and directed that he receive the mortgage, and pay the money, if everything was all right. Halliday caused an examination of the records to be made, sufficient to assure himself that no conveyance or incumbrance had been placed upon the property subsequent to the time of the execution of the Howland mortgage, and concluded the business, and

received the mortgage of $800 in favor of Mrs. Blanchard. Mrs. Blanchard died in April, 1890, and Duncan Hyndman, as her executor, foreclosed the mortgage executed to her. On the 29th of April, 1891, William C. Sharp deeded the premises to John C. Sharp. Complainant has derived title under the Blanchard foreclosure. Subsequently the Crossman mortgage was also foreclosed by advertisement, and title is claimed by defendants under said foreclosure. The question as to whether the representation claimed to have been made to Halliday at the time he received the Howland mortgage was in fact made was a matter in dispute between the parties. The circuit judge found as a fact that such representation was made, but also found that the mortgage had not in fact at that time been fully paid to John W. Sharp by his son. This finding of fact is challenged. It would not be profitable to go at length into the testimony in this opinion. We have carefully examined the record, and think the conclusion of the circuit judge upon this question of fact fully warranted by the testimony.

The complainant contended below:

*First.* That John W. Sharp, and those succeeding to his estate, were estopped from asserting the Crossman mortgage as against complainant's mortgage.

*Second.* That if the court should not adopt this view, complainant having furnished the money with which to pay off the Howland mortgage, and as there could be no doubt upon this finding that there was an estoppel arising in favor of Miss Howland, complainant should, in equity, be subrogated to her rights.

The learned circuit judge rested his conclusion upon the first contention, and found that there was an estoppel. We find difficulty in accepting this view, as, at the time the representation was made, John W. Sharp could not have known that Halliday would ever be called upon to act upon behalf of this complainant, or any other than Miss Howland. The general rule is that, to constitute an estoppel, the statement which is alleged to work the estoppel must have been made to the party who was expected

to act upon it, or to his agent, or other person in privity with him. We prefer, therefore, to rest our conclusions upon the doctrine of subrogation. Clearly, the case falls within this equitable doctrine. Mrs. Blanchard, through her agent, Halliday, advanced money with which to pay off the Howland mortgage, and which was devoted to that purpose, understanding and believing that she was receiving a valid first lien upon the property. Every consideration of equity would preclude the defendants, or either of them, from receiving the benefit of this payment by asserting a lien which was not known by Mrs. Blanchard to exist, particularly as we are unable to say that she was guilty of any negligence in accepting her security in this mistaken belief.

The defendants contend that, before subrogation can take place, by which a party advancing money to discharge a lien can be substituted in place of the lienor, it must appear that the party so advancing the money is under some legal obligation to make the payment; that such substitution does not take place in favor of a mere volunteer. This is undoubtedly the general rule. The case of *Desot* v. *Ross*, 95 Mich. 81, to which counsel refer as sustaining their contention, illustrates the rule. In that case this court, having determined that the paper relied on by defendant gave no right to a lien upon the property, had before it the simple question of whether one who, with his eyes open, and in the absence of any fraud or mistake, advances money for the discharge of a lien, is entitled to be substituted in place of the lienor, and held, in accordance with the rule prevalent everywhere, as we think, that no subrogation takes place in such case. But the question of who is or who is not a mere volunteer is not entirely free from difficulty. In numerous cases in this State parties who have accepted security in good faith, upon a loan made for the purpose of discharging existing incumbrances upon the same real estate, have, upon its appearing that the security was ineffectual or invalid, been allowed to be subrogated to

the rights of prior lienors, there being no person intervening entitled to superior equities. Such was the holding in *Detroit Fire & Marine Ins. Co.* v. *Aspinall*, 48 Mich. 238, and in *Lockwood* v. *Bassett*, 49 Mich. 550, and the same doctrine was recognized in *Kelly* v. *Kelly*, 54 Mich. 48. In Sheld. Subr. § 8, the rule is stated to be general that, where money has been loaned upon a defective mortgage for the purpose of discharging a prior valid incumbrance, and has actually been so applied, the mortgagee may be subrogated to the rights of the prior incumbrancer whom he has thus satisfied, there being no intervening incumbrances. The principle upon which these holdings rest is clear, and applies with equal force to a case where the security is partly invalid, and does not cover all the property intended, or in the full right intended, as to a case where the security is so imperfect as to cover no part of the property; and the doctrine has been so applied in *Emmert* v. *Thompson*, 49 Minn. 386 (32 Am. St. Rep. 566). There are cases which extend this doctrine still further, but, for the purposes of this case, it is unnecessary to determine their soundness.

It is contended that by the foreclosure of the Blanchard mortgage the mortgage right, as well as the right to subrogation, was merged in the title of complainant, and that he is now without remedy. But it appears that the executor, who was acting for complainant, was assured by William C. Sharp that the Crossman mortgage had been paid, and was acting in this belief. We think, therefore, that the complainant is not precluded from now claiming subrogation.

Decree will be entered in this court subrogating the complainant to the rights which Miss Howland had under her mortgage at the time of its payment, and he will be entitled to foreclose the same to the amount of $800, with interest at 6 per cent. Complainant will also recover costs of the court below, and no costs will be awarded in this court.

The other Justices concurred.