SCHANHITE *v.* PLYMOUTH UNITED SAVINGS BANK.

PLYMOUTH UNITED SAVINGS BANK *v.* SCHANHITE.

1. MORTGAGES—CANCELLATION—JUNIOR LIEN—RECORDING.

Acceptance by a mortgagee of a new mortgage and cancellation of old one does not deprive him of his right to have the lien of the discharged mortgage continued against an intervening lien where act of cancellation was done in ignorance of fact that intervening recorded lien existed, unless there is some special disqualifying fact.

2. SAME—DISCHARGE—JUNIOR LIEN—RECORDING—INTENT.

Generally cancellation of a mortgage on the record is not conclusive as to its discharge or as to payment of indebtedness secured thereby and senior mortgagee who, contemporaneously with discharging his mortgage, takes a new mortgage, will not, in the absence of paramount equities be held to have subordinated his security to an intervening lien unless such is shown to have been his intent by circumstances of the transaction or extrinsic evidence.

3. EQUITY—MORTGAGES—TAX SALES.

Equity should lend an attentive ear to those who, acting in good faith, seek to preserve mortgage security against possibility of tax sales and where rights of innocent parties have not intervened.

4. MORTGAGES—PRIORITY OF LIENS—ASSIGNMENTS.

Bank, to which mortgagee assigned mortgage as security for a loan and, when mortgagor's assignee gave bank a new mortgage for balance due from mortgagee plus sum bank paid for back taxes, discharged debt without knowledge of second assignment, also as collateral security, that recited senior lien thereon but upon discovery of such fact would not release mortgage, *held,* entitled to reinstatement of priority of lien where rights of third parties had not intervened.

5. SAME—ASSIGNMENTS—RECORDING—PRIORITIES.

    Subsequent assignee of land contract purchaser who received warranty deed from a preceding assignee and later in securing settlement and quitclaim deed from vendor-mortgagee, assumed latter's obligation to bank for which mortgage had been assigned as security *held*, to take quitclaim deed subject to instruments of record affecting title at time of such settlement, including assignment of mortgage by mortgagee to another assignee which had recorded its assignment.

Appeal from Wayne; Dingeman (Harry J.), J. Submitted June 2, 1936. (Docket No. 27, Calendar No. 38,901.) Decided September 2, 1936. Rehearing denied October 16, 1936.

Bill by Carl W. Schanhite and wife and State Savings Bank against Plymouth United Savings Bank and James E. Glass and wife to secure the release and discharge of a claimed interest in a mortgage and for other relief. Cross-bill by defendant bank against plaintiffs, defendants Glass and others for an accounting, foreclosure of a mortgage and other relief. From decree for defendant bank, plaintiffs appeal. Affirmed in part. Vacated in part and remanded. Modified on denial of rehearing.

*Hulett & Coash,* for plaintiffs.

*Goodenough, Voorhies, Long & Ryan,* for defendant bank.

BUSHNELL, J. Schanhite and wife, with State Savings Bank of Ann Arbor, sought a decree requiring Plymouth United Savings Bank, to release and discharge its claimed interest in a certain mortgage which had been assigned to the Plymouth bank by Glass and wife. Defendant bank by cross-bill sought an accounting of the amount claimed to be due it and, in default of payment, a decree ordering a sale

of the property with a personal judgment against cross-defendants.

Testimony was taken before a circuit court commissioner upon whose findings the court entered a decree granting relief to defendant Plymouth bank, and ordering a sale of the mortgaged premises unless $30,823.42 and interest was paid by defendants Glass and wife, John C. Lashley and New Detroit Land Company, who were held to be personally liable. The bill of complaint of State Savings Bank, and Schanhite and wife was ordered dismissed and these parties appeal.

Thomas H. Welch purchased the east half of the southeast quarter of section 25, town 1 south, range 9 east, in Livonia township, Wayne county, from James E. and Mary S. Glass, giving them a purchase money mortgage in the sum of $108,000, which was recorded January 16, 1925. A note was not given with the mortgage.

Glass and wife assigned their interest in this mortgage to State Savings Bank of Ann Arbor, the assignment being recorded August 19, 1930, it being understood that the assignment was to secure an indebtedness of Glass to the Bank in the sum of $8,000. Glass and wife made a second assignment dated March 11, 1931, to Plymouth United Savings Bank, which was recorded October 27, 1931. The second assignment was "as collateral security for the payment of all indebtedness or liability, absolute or contingent * * * and subject to a prior assignment to the State Savings Bank * * * which assignment * * * was made as security only."

Welch and wife conveyed the property by deed, recorded February 16, 1925, to T. H. Welch Company, who, in turn, conveyed to John C. Lashley, who assumed and agreed to pay the Glass mortgage. The Lashley deed was recorded June 18, 1925.

Lashley and wife conveyed to New Detroit Land Company by deed recorded the same date with the same conditions and the land company conveyed on January 26, 1931, to Schanhite who had been buying on land contract. This deed was not recorded because of unpaid taxes, but its delivery and acceptance is not in question.

On October 12, 1926, the property was subdivided by New Detroit Land Company, as proprietor, Glass and wife, as mortgagees, and Schanhite and wife as vendees joining in the plat.

Glass, his wife, and the land company on January 23, 1931, entered into an agreement modifying the terms of payment of the mortgage and specifying the amount of the unpaid balance to be $75,500. Neither the land company nor Schanhite, however, made the payments provided for in this supplemental agreement.

On December 1, 1931, without the knowledge or consent of the Plymouth bank, but with the approval of the Ann Arbor bank, Glass, his wife and Schanhite entered into a written agreement reducing the unpaid mortgage debt from $74,700 to $37,350 and providing for new terms of payment. Schanhite did not make the new payments.

On April 29, 1932, because of the impossibility of recording his warranty deed, Schanhite obtained a quitclaim deed from the land company which was recorded May 2, 1932. On the same date, Schanhite recorded a quitclaim deed from Glass and wife, dated April 30, 1932, which recited "that it was given for the purpose of conveying whatever interest the said James E. Glass and Mary S. Glass own in said property." Schanhite gave as consideration for the Glass quitclaim deed a $3,500 interest in the

subdivision, a note for $2,500 and assumed the indebtedness to the Ann Arbor bank.

On the same date and as a part of the same transaction, Schanhite gave a mortgage to the State Savings Bank in the sum of $9,350 which was also recorded May 2, 1932. On this date, Glass and wife owed the State Savings Bank $6,100, which was made a part of Schanhite's indebtedness, the remaining $3,250 being advanced by it in the form of a check to the county treasurer and used to pay back taxes.

At the time of the taking of testimony by the circuit court commissioner, May 10, 1934, Glass and his wife were indebted to the Plymouth bank in the sum of $28,271.08. Prior to the recording of its assignment, several parcels had been released from the mortgage by Glass and wife.

The issues are stated, in the findings of the commissioner, as follows:

"In this cause, plaintiff Schanhite claims he had no knowledge of the assignment of the Welch mortgage to the Plymouth United Savings Bank, and when he secured a quitclaim deed from James E. and Mary S. Glass, without knowledge of this assignment, that he secured title to the property free of the mortgage incumbrance, and that he is entitled for this reason to a decree canceling or discharging the mortgage. The State Savings Bank of Ann Arbor claims substantially the same thing. It is claimed by the Plymouth United Savings Bank that Schanhite is charged with constructive knowledge of the assignment of the mortgage to them and also that he has actual knowledge thereof, and that their lien is a subsisting first mortgage lien against the property. They claim that while it was ordinarily subject and secondary to the lien held by the State

Savings Bank of Ann Arbor, that on April 30, 1932, when the note and mortgage of $9,350 were taken by the State Savings Bank, that the indebtedness of the said James E. and Mary S. Glass to this bank was discharged and their first lien was discharged, and the new mortgage which they took became second and subject to the, lien of the Plymouth United Savings Bank.''

The questions presented by the appeal narrow down to this: Did the Ann Arbor Bank and Schanhite have constructive notice of the assignment of the Welch-Glass mortgage to the Plymouth bank? If the bank had notice, should it be restored to its former position of priority under the equitable doctrine of mistake?

The Plymouth bank took assignment of the mortgage as security only, with both actual and constructive notice of the prior lien of the Ann Arbor bank. This assignment was not recorded until seven months after its execution and contained a recital of the prior assignment. The testimony of the assignors is that the Ann Arbor bank was fully informed about the second assignment, but Mr. Walz, its president, denies that he ever had knowledge of the interest of anyone except the mortgagee, his wife and the first assignee, and stated that had he known that Glass had assigned to the Plymouth bank he would not have made the deal with Schanhite. The Ann Arbor bank was secured, but funds were needed to pay delinquent taxes that were about to be sold; $3,250 in cash was provided for this purpose, which benefited everyone concerned, including the Plymouth bank. The Glass note of $6,100 was cancelled and the bank accepted Schanhite as its debtor, but it still looked to the land as security by taking a new mortgage. It did not,

however, release or discharge the Welch-Glass mortgage which it then owned, but gave the Glasses and the land company quitclaim deeds, with the Schanhite-bank mortgage, check for taxes, and abstract of title to Schanhite, so that the several instruments could be entered upon the abstract and returned. When it was discovered, upon examination of the recertified abstract, that the Plymouth bank assignment was a lien against the property, the Ann Arbor bank withheld discharge of its lien and about a year later joined with Schanhite in the bill filed herein.

"It is well settled that the acceptance by a mortgagee of a new mortgage, and his cancellation of the old one, does not deprive him of his right to have the lien of the discharged mortgage continued against an intervening lien, where the act of cancellation was done in ignorance of the fact that the intervening lien existed, unless there is some special disqualifying fact; and this, although the intervening lien was on record at the time." 19 R. C. L. p. 452.

"It is a general rule that the cancellation of a mortgage on the record is not conclusive as to its discharge, or as to the payment of the indebtedness secured thereby. And where the holder of a senior mortgage discharges it of record, and contemporaneously therewith takes a new mortgage, he will not, in the absence of paramount equities, be held to have subordinated his security to an intervening lien unless the circumstances of the transaction indicate this to have been his intention, or such intention upon his part is shown by extrinsic evidence." 33 A. L. R. 149, note. See, also, *Sullivan* v. *Williams,* 210 Ala. 363 (98 South. 186; 33 A. L. R. 147).

Equity should lend an attentive ear to those who, acting in good faith, seek to preserve the mortgage

security against the possibility of tax sales and where the rights of innocent parties have not intervened.

The Plymouth bank held a junior lien and it would be inequitable to permit it to gain an unconscionable advantage over the Ann Arbor bank merely because the latter, in good faith and without culpable negligence, was willing to advance the necessary tax moneys, the nonpayment of which might have caused the impairment or loss of the security.

The reinstatement of the lien of the Ann Arbor bank can be accomplished without working a hardship or injustice upon anyone especially since the rights of third parties are not concerned.

"Where a mortgage has been discharged from the record through mistake, it may be restored in equity, and given its original priority as a lien, when the rights of innocent third parties will not be affected." *Ferguson* v. *Glassford,* 68 Mich. 36.

See, also, 58 L. R. A. 789 note.

Appellant Schanhite claims lack of knowledge of the assignment to the Plymouth bank. He assumed and agreed to pay the Glass mortgage when he accepted a warranty deed from the New Detroit Land Company. He was unable to record this deed because of unpaid taxes and before he recorded his quitclaim deed the Plymouth bank assignment had been placed on record. He was bound by the recorded instruments affecting the title when he made the settlement with Glass and wife. Glass testified that Schanhite said, when he was told about the second assignment, that he did not care anything about the Plymouth bank.

We find nothing in the record justifying the extinguishment of the lien of the Plymouth bank nor do we find sufficient testimony to permit an ac-

curate computation of the balance due upon the original mortgage which is now in default.

Defendants and cross-defendants, James E. Glass, Mary S. Glass, his wife, John C. Lashley and New Detroit Land Company, not having appealed from the decree holding them personally liable for the debt secured by the mortgage, the decree will be affirmed as to them. It will be reversed and vacated as to appellants *Carl W. Schanhite, Katherine M. Schanhite, his wife, and* * State Savings Bank.

The cause will be remanded to the circuit court for determination of the amount due upon the mortgage and for the entry of a decree in conformity to this opinion. The lien of State Savings Bank will be reinstated with seniority over that of the Plymouth United Savings Bank.

The decree below is affirmed in part and vacated in part. The cause is remanded, with costs to appellants.

NORTH, C. J., and FEAD, WIEST, BUTZEL, SHARPE, and TOY, JJ., concurred. POTTER, J., did not sit.

### ON MOTION FOR REHEARING.

PER CURIAM. A petition for rehearing having been heard and considered, the opinion heretofore rendered is corrected to strike therefrom the inadvertent language reversing and vacating the decree as to appellants Carl W. Schanhite and Katherine M. Schanhite, his wife. The decree to be entered below may provide for foreclosure of the mortgage of Plymouth United Savings Bank subject, however, to the senior lien of State Savings Bank after determination by the trial court of the amounts due both banks, such decree to conform to the opinion heretofore rendered as herein modified.

---

* See per curiam opinion denying application for rehearing below.— REPORTER.