WASHINGTON MUTUAL BANK, FA v SHOREBANK CORPORATION

Docket No. 254338. Submitted June 14, 2005, at Detroit. Decided June 23, 2005, at 9:10 a.m. Leave to appeal sought.

Washington Mutual Bank, F.A., brought an action in the Oakland Circuit Court against ShoreBank Corporation; Standard Federal Bank, N.A.; and Hanna and Jaklin Shina, seeking priority of its mortgage lien on property owned by the Shinas over similar liens held by ShoreBank and Standard Federal. The Shinas had obtained a first mortgage loan from Option One Mortgage Corporation and junior mortgage loans from ShoreBank and Standard Federal. While those loans were outstanding, the Shinas obtained a mortgage loan from the plaintiff. The Shinas then used the proceeds from the loan from the plaintiff to pay off the loan from Option One. The court, Patrick J. Brennan, J., granted summary disposition for ShoreBank and Standard Federal, rejecting the plaintiff's claim that it should stand in the place of Option One in terms of priority under the doctrine of equitable subrogation. The plaintiff appealed.

The Court of Appeals *held*:

1. Equitable subrogation properly applies whenever a person other than a mere volunteer pays a debt or demand that in equity and good conscience should have been satisfied by another. The plaintiff, as a mere volunteer, is not entitled to equitable subrogation.

2. The doctrine of equitable subrogation does not allow a new mortgage to take the priority of an older mortgage merely because the proceeds of the new mortgage were used to pay off the indebtedness secured by the old mortgage.

Affirmed.

MORTGAGES — EQUITABLE SUBROGATION — INTERVENING MORTGAGES.

The doctrine of equitable subrogation generally does not apply to allow a new mortgage, granted as part of a refinancing transaction, to take the priority of the original mortgage, which is being paid off, and give the new mortgage priority over intervening mortgage liens.

*Howard & Howard* (by *Lisa A. Robinson, Tanya M. Clark,* and *Robert J. Curtis*), and *John M. Shureb,* for Washington Mutual Bank, F.A.

*Shaheen, Jacobs & Ross, P.C.* (by *Michael J. Thomas* and *William Huffman*), for ShoreBank Corporation.

*Plunkett & Cooney, P.C.* (by *Jeffrey C. Gerish, Mary Massaron Ross,* and *Douglas C. Bernstein*), for Standard Federal Bank, N.A.

Before: SAWYER, P.J., and MARKEY and MURRAY, JJ.

SAWYER, P.J. Plaintiff appeals an order of the circuit court granting summary disposition for defendants on plaintiff's complaint seeking recovery on a loan secured by a mortgage. We affirm.

Plaintiff alleges that it made a $392,000 loan to Hanna and Jaklin Shina secured by a mortgage on property located in West Bloomfield. Most of the loan proceeds were used to satisfy and discharge a prior first mortgage on the property in favor of Option One Mortgage Corporation. According to plaintiff, it was unaware of the fact that, at the time it made the loan to the Shinas, there were two other mortgages recorded against the property: a $200,000 mortgage in favor of ShoreBank and a $249,000 mortgage in favor of Standard Federal Bank. Plaintiff alleges that the Shinas have defaulted on both those mortgages, which put the property into foreclosure. Although both those mortgages were recorded before the mortgage in favor of plaintiff, both were made after the Option One mortgage.

Plaintiff filed a multicount complaint. Count one claimed that, under the doctrine of equitable subrogation, the mortgage in favor of plaintiff should be supe-

rior to, and have priority over, the mortgages in favor of ShoreBank and Standard Federal. That is, the Washington Mutual mortgage should stand in the place of the Option One mortgage. The trial court granted summary disposition in favor of defendants, concluding that plaintiff had no legal obligation to pay off the Option One mortgage and, therefore, it was a volunteer not entitled to equitable subrogation. The trial court also referenced plaintiff's ability to recover under a title insurance policy. Plaintiff's claims against ShoreBank and Standard Federal are the only ones at issue in this appeal. We review de novo the grant of summary disposition. *Beaudrie v Henderson.*[1]

Subrogation comes in two forms described by the Supreme Court in *French v Grand Beach Co*[2] as follows:

> The doctrine of subrogation rests upon the equitable principle that one who, in order to protect a security held by him, is compelled to pay a debt for which another is primarily liable, is entitled to be substituted in the place of and to be vested with the rights of the person to whom such payment is made, without agreement to that effect. This doctrine is sometimes spoken of as "legal subrogation," and has long been applied by courts of equity. *Stroh* v. *O'Hearn*, 176 Mich. 164, 177 [142 NW 865 (1913)]. There is also what is known as "conventional subrogation." It arises from an agreement between the debtor and a third person whereby the latter, in consideration that the security of the creditor and all his rights thereunder be vested in him, agrees to make payment of the debt in order to relieve the debtor from a sacrifice of his property due to an enforced sale thereof. It is wholly independent of any interest in the property which the lender may have to protect. It does not, however, inure to a mere volunteer who has no equities which appeal to the conscience of the court.

---

[1]  465 Mich 124, 129; 631 NW2d 308 (2001).

[2]  239 Mich 575, 580-581; 215 NW 13 (1927).

In *Stroh v O'Hearn*,[3] the Court noted that the equitable principle of subrogation is not available to volunteers:

> Subrogation is an equitable doctrine depending upon no contract or privity, and proper to apply whenever persons other than mere volunteers pay a debt or demand which in equity and good conscience should have been satisfied by another. It is proper in all cases to allow it where injustice would follow its denial, and in allowing it all injustice should be guarded against so far as possible.

The principle that subrogation is not available to a mere volunteer was again applied in *Lentz v Stoflet*.[4] Indeed, even in *Walker v Bates*,[5] a case that cannot be reconciled with *Lentz*, the Court acknowledged that subrogation is not available to a mere volunteer. See also *Hartford Accident & Indemnity Co v Used Car Factory, Inc*[6] and *Beaty v Hertzberg & Golden, PC*.[7]

Thus, the question becomes whether plaintiff is properly categorized as a "mere volunteer." Not surprisingly, plaintiff relies on *Walker* in its argument that it was not a volunteer in paying off the Option One mortgage. The relevant transaction history in *Walker* is this:

> (1) The Hannas purchased the property at issue and granted a mortgage to Highland Park State Bank.
>
> (2) The plaintiffs sued Henry and Frances Bates, claiming that the Bateses had fraudulently purchased the property with the plaintiffs' money.

---

[3] *Id.*

[4] 280 Mich 446, 451; 273 NW 763 (1937).

[5] 244 Mich 582, 587; 222 NW 209 (1928).

[6] 461 Mich 210, 215-216; 600 NW2d 630 (1999).

[7] 456 Mich 247, 255; 571 NW2d 716 (1997) (for a third party to avoid being classified as a mere volunteer, the damage must have been incurred as the result of the third party's fulfillment of a legal or equitable duty owed by the third party to the client).

(3) Frances Bates contracted to sell the property to Charles Derr and his wife.

(4) The Derrs contracted to sell the property to the Howeses, with the Howeses assuming the mortgage given to Highland Park State Bank.

(5) A lis pendens was filed related to the plaintiffs' suit against the Bateses.

(6) Frances Bates mortgaged the property to Commonwealth-Federal Savings Bank, with the Hannas' mortgage to Highland Park State Bank being paid and discharged.

(7) Frances Bates conveyed the property by warranty deed to the Howeses.

(8) A judgment was rendered in favor of the plaintiffs and a lien was placed on the property.

(9) An action was commenced to foreclose on the lien.

In the litigation to foreclose the lien, Commonwealth-Federal claimed that it was entitled to be subrogated to the rights of Highland Park State Bank as mortgagee. The analysis by the majority in *Walker*, however, is scant. It essentially consists of quoting much of the same material from *French* that we did above, and then making the following statement:

> The first mortgage was upon the property when the notice of *lis pendens* was filed. No injustice results from subjecting plaintiffs' rights thereto. Their interest in the property is charged with the payment of a mortgage lien of the same amount as that which was on it when the *lis pendens* was filed. The trial court very aptly said:

> "It is immaterial to the plaintiff and wasn't wronging him any, to just simply change from the Highland Park Bank to the Commonwealth Bank." [8]

---

[8] *Walker, supra* at 587.

In short, although the *Walker* majority acknowledged the "mere volunteer" rule by quoting from *French*, it did not engage in any meaningful analysis of the point. Rather, the extent of its analysis rested on its conclusion that applying the doctrine would not create any injustice to the holder of the lis pendens because the holder was in no worse position than it was before the remortgaging.

While the majority in *Walker* ignored the volunteer rule, the dissent did not, making the following observation:

> A stranger to the title cannot, by payment of the whole or any portion of a mortgage, become subrogated to the rights of the mortgagee. The Commonwealth-Federal Savings Bank was a stranger to the parties and the title, a volunteer, with no interest in or claim against the parties or the premises which it was, in equity entitled to have protected. Under such circumstances, it is not entitled to subrogation to the prejudice of plaintiffs' lien.[9]

Were *Walker* the last word on the subject, we might have to agree with plaintiff that *Walker* compels a conclusion that an entity in plaintiff's position is not a volunteer, though such a conclusion would arise more from the implications of *Walker* than its express holding or analysis. But *Walker* is not the final word on the subject. Rather, it appears that the Supreme Court's opinion nine years later in *Lentz* is the Supreme Court's latest word on the topic of equitable subrogation in the context of mortgages. *Lentz*, like *Walker*, was written by Justice SHARPE. *Lentz*, however, reached the opposite result as *Walker*, despite a similarity in facts.

Specifically, the transactions at issue in *Lentz* were these:

---

[9] *Id.* at 584-585 (POTTER, J., dissenting).

(1) William Mexico and his wife gave a mortgage in the amount of $4,000 to Rockwood State Bank over a 94.72-acre tract of land.

(2) The Mexicos conveyed the property to the Stoflets.

(3) The Stoflets mortgaged 68.49 acres of the property to Rockwood State Bank.

(4) Rockwood State Bank foreclosed on both mortgages and acquired title to the property.

(5) The Stoflets mortgaged the 68.49-acre tract to the State Savings Bank of Carleton.

(6) Rockwood State Bank discharged the mortgages it held and conveyed the property to the Stoflets.

(7) The next day, the Stoflets made payment to Rockwood State Bank with money loaned to them by an agent of the plaintiffs, with a mortgage being granted to the plaintiffs covering the 68.49-acre tract of land as well as two other parcels.

(8) The plaintiffs commenced foreclosure on the mortgage and sought a determination that their mortgage be given priority over the mortgage to the State Savings Bank of Carleton on the basis that the plaintiffs' rights should be subrogated to the rights of Rockwood State Bank and its two mortgages on the property under a theory of equitable subrogation.

In his analysis, Justice SHARPE again quoted from *French,* as well as three other sources discussing the volunteer rule. The analysis began with a discussion of the fact that the new mortgage was in a greater amount and covered additional land, with the ability of the State Savings Bank to recover any deficiency being reduced. The majority then made the following observations:

When plaintiffs loaned the money they had no interests to protect. It was done without any agreement or understanding that they were to enjoy the fruits of subrogation. It was voluntarily done upon their part and to grant it

would not leave defendant in its former position. A mere volunteer is not entitled to subrogation.[10]

Interestingly, Justice SHARPE did not cite his previous opinion in *Walker*, much less explain how it was distinguishable from *Lentz*.

While Justice SHARPE ignored *Walker*, Justice POTTER, the author of the dissent in *Walker*, did not. Justice POTTER filed a concurring opinion in *Lentz*, which opinion opened with the observation that the effect of the opinion in *Lentz* is to overrule *Walker*.[11] After reviewing several authorities on the issue of the volunteer rule, Justice POTTER stated:

> This case [*Walker*] holds that a mere stranger to the title who voluntarily advances money to help a fraudulent holder of real estate pay a mortgage placed by him thereon has equities more appealing to the conscience of the court than those of the real but defrauded owner of the real estate with notice of whose rights the money was advanced. This case stands alone. It violates all the principles underlying the cases involving legal or conventional subrogation in England and America. It is not a precedent to be followed, but an accident to be avoided.[12]

We also find guidance from Justice POTTER in his concurrence:·

> Subrogation "from its very nature, never could have been intended for the relief of those who were in a condition in which they were at liberty to elect whether they would or would not be bound." *Gadsden* v. *Brown*, 1 Speer's Eq. (S. C.) 37 [17 SC Eq 37 (SC App Eq, 1843)]. This, says the Supreme Court of the United States, is

---

[10] *Lentz, supra* at 451.

[11] *Id.* at 451 (POTTER, J., concurring).

[12] *Id.* at 455 (POTTER, J., concurring).

perhaps as clear a statement of the doctrine as can be found anywhere. *Ætna Life Ins. Co.* v. *Middleport,* 124 U. S. 534 (8 Sup. Ct. 625) [31 L Ed 537 (1888)]. This was the rule recognized in *Smith* v. *Austin,* 9 Mich. 465 [1862], and *Kitchell* v. *Mudgett,* 37 Mich. 81 [1877]. In *Desot* v. *Ross,* 95 Mich. 81 [54 NW 694 (1893)], complainant was sought to be subrogated. It is said:

> "She was a stranger to the title, and as such could not, by payment of the whole or any portion of the mortgage, become subrogated to the rights of the mortgagee."

The court cited in support of this proposition *Kelly* v. *Kelly,* 54 Mich. 30, 47 [19 NW 580 (1884)]; *Shinn* v. *Budd,* 14 N. J. Eq. 234, 237 [(1862)]; *Brice* v. *Watkins,* 30 La. Ann. 21 [(1878)]; and quoted with approval from *Sanford* v. *McLean,* 3 Paige Ch. (N. Y.) 117, 122 (23 Am. Dec. 773) [3 NY Ch Ann 80 (1832)], as follows:

> " 'It is only in cases where the person advancing money to pay the debt of a third party stands in the situation of a surety, or is compelled to pay it to protect his own rights, that a court of equity substitutes him in the place of the creditor as a matter of course, without any agreement to that effect. In other cases the demand of a creditor which is paid with the money of a third person, and without any agreement that the security shall be assigned or kept on foot for the benefit of such third person, is absolutely extinguished.' "[13]

We are obligated to follow the most recent pronouncement of the Supreme Court on a principle of law. *Brown v Genesee Co Bd of Comm'rs (On Remand).*[14] The most recent pronouncement of the Supreme Court on this topic would certainly seem to be that the doctrine of equitable subrogation does not allow a new mortgagee to take the priority of the older mortgagee merely because the proceeds of the new mortgage were

---

[13] *Id.* at 452 (POTTER, J., concurring).

[14] 233 Mich App 325, 328; 590 NW2d 603 (1998), rev'd on other grounds 464 Mich 430 (2001).

used to pay off the indebtedness secured by the old mortgage. It is clear to us that, under *Lentz*, plaintiff is a mere volunteer and, therefore, is not entitled to equitable subrogation.

Plaintiff, however, offers other reasons why it should be entitled to equitable subrogation. Plaintiff argues that equitable subrogation should apply because the mortgage was obtained through fraud, the fraud being the Shinas' failure to disclose the mortgages given to defendants in the mortgage application to plaintiff. But the cases cited by plaintiff do not support its position.

First, three of the cases did not even involve the question of giving priority to one mortgage over another. In *Linn v Linn*,[15] the mortgagee held two mortgages on a property, which were replaced by a new mortgage, with the mortgagors being a husband and wife. After the husband's death, the wife denied having executed the mortgage. The Court held that the earlier mortgages were to be revived because their discharge was obtained through the supposed execution of the fraudulent new mortgage. In *White v Newhall*,[16] the Court ruled against the purported mortgagee, concluding that the proper remedy was for the purported mortgagee to seek an equitable lien.[17] Finally, in *Coulter v Minion*,[18] Minion owned property in Barry County and Lloyd owned property in Grand Rapids. They exchanged the two properties, plus an additional $250 to be paid to Minion. Lloyd had mortgaged the Grand Rapids property and, under the agreement, Lloyd would mortgage the Barry County property to pay off the

[15] 122 Mich 130; 80 NW 1000 (1899).
[16] 68 Mich 641; 36 NW 699 (1888).
[17] *Id.* at 647.
[18] 139 Mich 200; 102 NW 660 (1905).

Grand Rapids mortgage and to pay the $250 to Minion. Minion arranged the mortgage with Coulter. As it turned out, Minion swindled Lloyd because the Barry County property was essentially worthless, and Lloyd abandoned it, defaulting on the mortgage. Coulter then sued Minion, seeking to be subrogated to the rights of the mortgagee on the Grand Rapids property (which now belonged to Minion) to recompense Coulter for her losses caused by Minion's fraud. The Court granted the mortgagee subrogation to Coulter. None of those cases dealt with a later mortgage being equitably subrogated to an earlier mortgage to leap ahead of intervening mortgages on the priority list.

On the other hand, in *Eggeman v Harrow*,[19] there was a question of the priority of an intervening mortgage, but it presented a pure question of fraud rather than an application of the volunteer doctrine. In *Eggeman*, the Eggemans gave a $3,000 mortgage to Harrow covering two lots. Thereafter, a new mortgage was made covering only one of the two lots in the amount of $2,000. On the same day, the Eggemans gave a mortgage over the same lot to Miller, Mrs. Eggeman's father. Although it appears that the new mortgage to Harrow was executed first, Mr. Eggeman maneuvered to have the Miller mortgage recorded first. In holding that the Harrow mortgage would have priority, the Court did not engage in a consideration of the application of the volunteer rule to the equitable subrogation doctrine. Rather, the Court concluded that the Miller mortgage was fraudulent in its entirety, noting that there had not, in fact, been any loan from Miller to the Eggemans that it secured, that there was not "any real consideration or equity" behind the mortgage.[20]

---

[19] 37 Mich 435 (1877).

[20] *Id.* at 439.

Any fraud in the case at bar is not materially different from the fraud in *Lentz*. In both *Lentz* and this case, the later mortgage was obtained apparently without disclosing the existence of the earlier mortgage(s). In short, if the volunteer doctrine applies in *Lentz* despite the fraud, then it also applies in this case despite the similar fraud.

Plaintiff also argues that a mistake of fact prevents plaintiff from being considered a volunteer. We disagree. As with the fraud issue, the cases relied on by plaintiff are not analogous to this case. In *Detroit & Northern Michigan Bldg & Loan Ass'n v Oram*,[21] the mistake involved was by a life tenant who believed that she owned the real estate in fee and mortgaged the property, paying off the preexisting mortgage. A second mistake occurred when the title abstractor failed to discover that the life tenant was not the owner in fee. The mortgagee sought to be subrogated to the original mortgage, which relief was granted. But the Court's holding very specifically noted two facts: the new mortgage was defective because the life tenant could not grant a mortgage, and there were no intervening encumbrances. *Id.* at 499. In this case, the mortgage to plaintiff is not defective and there are intervening encumbrances. Similarly, *Sproal v Larsen*[22] allowed subrogation where the mortgagor no longer held title because of a conveyance occurring between the filings of the original mortgage and the subsequent mortgage, with the Court noting the requirement that there could be no persons with intervening superior equities in order to apply subrogation.[23] *Detroit Fire Marine & Ins*

---

[21] 200 Mich 485; 167 NW 50 (1918).

[22] 138 Mich 142; 101 NW 213 (1904).

[23] *Id.* at 143.

*Co v Aspinall*,[24] also represents a case in which there was a failed mortgage with no intervening liens to be considered.

In *Taylor v Roniger*,[25] there was a mistake regarding ownership. The plaintiff bought the property subject to a preexisting mortgage, which he then paid off. But his title was defective because the seller's ex-wife never signed the deed conveying the property to the plaintiff, and, therefore, she retained ownership (and became sole owner after her ex-husband's death). The Court ultimately held that the plaintiff, in essence, became the equitable owner of the mortgage he paid off.[26]

Plaintiff's reliance on *French* is grossly misplaced because a mistake was not at issue and the quotation in plaintiff's brief that refers to subrogation applying in cases of mistake, among others, which plaintiff attributes to *French,* is actually from a different source that *French* itself quotes. The issue in *French* was whether the holder of a promissory note secured by a first mortgage could be compelled to accept payment and issue an assignment and subrogation of that note to a new lender. Apparently the new lender in *French* wanted the priority of the first mortgage (which the plaintiff was foreclosing on because of a default by the defendant), and the plaintiff did not want the new lender to obtain priority over the second mortgage because the plaintiff also held bonds secured by the second mortgage. The Court determined that it was equitable to require the plaintiff to issue the assignment and subrogate the new lender to the original mortgage. No mistake was involved. See also *Moore v*

---

[24] 48 Mich 238; 12 NW 214 (1882).

[25] 147 Mich 99; 110 NW 503 (1907).

[26] *Id.* at 104.

*Smith*,[27] which also involved the right to an assignment, in that case in order to redeem the property following a foreclosure.

Similarly, *Palmer v Sharp*[28] did not involve a mistake; rather, it involved a fraud. Further, while plaintiff does quote a brief passage that references "mistake," that is not the basis of the analysis of that case. In fact, like in *Oram*, the Court in *Palmer* specifically noted that, for subrogation to apply, there can be no intervening encumbrances.[29] There also was no mistake involved in *Draper v Ashley*,[30] in which the facts differ greatly from the case at bar. Indeed, if anything, *Draper* supports defendants' position because the Court specifically noted that "one who pays off a prior incumbrance, and takes a new security for the advance, is not entitled to priority over an intervening incumbrance."[31]

Also, as with the fraud argument, plaintiff overlooks the fact that the mistake in this case is no different than the mistake in *Lentz*. The mistake in both cases is that a new mortgage was granted to pay off a senior mortgage, without the discovery of intervening junior mortgages. Accordingly, there is no basis for distinguishing this case from *Lentz* on the basis of a mistake providing an exception to the volunteer rule.

Next, plaintiff cites *Smith v Sprague*,[32] for the proposition that a mere promise of repayment is sufficient to prevent plaintiff from being regarded as a volunteer. Once again, this overlooks the fact that the promise of repayment in the case at bar is no different from that in

---

[27] 95 Mich 71; 54 NW 701 (1893).

[28] 112 Mich 420; 70 NW 903 (1897).

[29] *Id.* at 423-424.

[30] 104 Mich 527; 62 NW 707 (1895).

[31] *Id.* at 531.

[32] 244 Mich 577; 222 NW 207 (1928).

*Lentz*, and, therefore, provides no basis to distinguish *Lentz*. Furthermore, the cases are different. In *Smith*, there was no issue of providing priority over intervening encumbrances. Rather, the Court used the subrogation doctrine to impose liability on the promissor's widow. Briefly, the defendant and her husband defaulted on mortgage notes. The husband borrowed money from his former daughter-in-law to pay off the mortgage, promising to grant the former daughter-in-law a mortgage to secure the debt, but he died without fulfilling his promise. The Court concluded that it was unnecessary to determine if the defendant had agreed with her husband to grant the mortgage to the plaintiff because, even if she had not, under equitable subrogation the plaintiff could be subrogated to the prior mortgage that had been paid off. Not only was that not a case of granting priority over intervening encumbrances, but it also appears that the exact opposite was true: the subrogation was subject to the intervening encumbrances. Although not discussed in detail in the opinion, in describing the trial court's decree, which was affirmed, the Court stated that the plaintiff "had decree with respect to the mortgage of $5,000 and subject to incumbrances created in the meantime, and defendant has appealed."[33] Thus, if anything, *Smith* supports defendants' position in the case at bar.[34]

Finally, relying on *Schanhite v Plymouth United Savings Bank*,[35] plaintiff argues that it should be given priority over the mortgages to defendants in order to prevent unjust enrichment. *Schanhite*, however, does

---

[33] *Id.* at 579.

[34] Interestingly, the unanimous decision in *Smith* was decided the same day as the apparently aberrant decision in *Walker* and cites many of the same authorities.

[35] 277 Mich 33; 268 NW 801 (1936).

not support plaintiff's position. In *Schanhite*, a mortgage was given to the sellers of the property, the Glasses, who thereafter gave two assignments of the mortgage for the purpose of securing their indebtedness. The first assignment was to State Savings Bank of Ann Arbor and the second was to Plymouth United Savings Bank. There are various conveyances of the property subject to the mortgage, with Schanhite eventually purchasing the property still subject to the mortgage previously given to the Glasses and with Schanhite expressly assuming the indebtedness to the Ann Arbor bank. As part of Schanhite's purchase transaction, he gave another mortgage on the same property to the Ann Arbor bank, the proceeds of which were used to pay off the indebtedness from the Glasses to the Ann Arbor bank, which indebtedness Schanhite had assumed, and to pay tax arrearages (the property was about to be sold for failure to pay taxes). At issue was whether the new mortgage to the Ann Arbor bank should have priority over the original mortgage and its assignment to the Plymouth bank. The Court held that it should, but the analysis does not support plaintiff's position in the case at bar. First, the Court applied the equitable doctrine of mistake and not equitable subrogation.[36] More to the point, the Court relied on the well-settled rule that the acceptance by a mortgagee of a new mortgage and his cancellation of the old mortgage do not deprive the mortgagee of priority over intervening liens.[37] Third, the Court noted that the Ann Arbor bank's loan was necessary to pay the tax arrearages, and had the money not been advanced, the property would have been lost to the tax man.[38] Thus, the new mortgage operated to the

---

[36] *Id.* at 38.

[37] *Id.* at 39.

[38] *Id.* at 40.

Plymouth bank's benefit. In other words, the Court, in effect, restored the original mortgage, essentially correcting the Ann Arbor bank's "mistake" of discharging the original mortgage.[39]

By contrast, in this case, we are not presented with a new mortgage being accepted by the holder of the old mortgage. That is, had the new mortgage been given to Option One Mortgage, and Option One was before us rather than plaintiff, *Schanhite* might provide the authority to revive the original mortgage and give the new mortgage the same priority as the one it replaced. For that matter, it might be sufficient under *Schanhite* if the plaintiff had first purchased the Option One mortgage and then accepted the new mortgage. But neither of those situations is present here, and, therefore, *Schanhite* is inapplicable. For that matter, there is no indication that the mortgage granted by plaintiff was necessary to preserve defendants' security in the property. That is, while defendants certainly have benefited by the new mortgage in that a debt with a higher security interest priority was discharged, there is no indication that defendants were about to lose their security interests if the loan had not been made at the time plaintiff made its loan to the Shinas. Accordingly, neither of the conditions present in *Schanhite* is present here.

*Schanhite* is similar to *Wallace v McBride*,[40] another case relied on by plaintiff. In *Wallace*, the plaintiff had received a fraudulently assigned second mortgage, which eventually was reassigned to the rightful holder. But, in the meantime, the first mortgage had been foreclosed and the plaintiff paid the money to redeem the property from the sheriff's sale on that foreclosure.

[39] *Id.*

[40] 70 Mich 596; 38 NW 592 (1888).

Thereafter, the plaintiff asserted an interest in the property based on his redemption. The Court held that the plaintiff was entitled to recover the money he paid for the redemption, though equity denied him interest on the debt.[41] As in *Schanhite*, in which the Court noted that the property would have been lost for taxes, the Court in *Wallace* noted that the holder of the second mortgage would have lost the land to the purchaser at the sheriff's sale of the property under the foreclosure of the first mortgage.

In sum, with the exception of *Walker*, we are unaware of any authority regarding the application of the doctrine of equitable subrogation to support the general proposition that a new mortgage, granted as part of a generic refinancing transaction, can take the priority of the original mortgage, which is being paid off, giving it priority over intervening liens. And, as for *Walker*, as Justice POTTER stated in his concurrence in *Lentz*, *Walker* "is not a precedent to be followed, but an accident to be avoided."[42] Such bolstering of priority may be applicable where the new mortgagee is the holder of the mortgage being paid off or where the proceeds of the new mortgage are necessary to preserve the property from foreclosure or another action that would cause the intervening lien holders to lose their security interests. But neither of those circumstances exists here. Therefore, plaintiff is not entitled to be subrogated to the original mortgage and receive priority over the intervening lienholders. Accordingly, the trial court properly granted summary disposition for defendants.

Plaintiff's other issue on appeal is that, in ruling against plaintiff, the trial court erroneously relied on

---

[41] *Id.* at 600-601.

[42] *Lentz, supra* at 455.

the existence of title insurance from which plaintiff could seek recovery. While we do not necessarily disagree with plaintiff that the availability of insurance coverage should have no bearing on the resolution of the substantive question presented in this case, because we conclude that the trial court properly granted summary disposition in favor of defendants, we need not address this issue.

Affirmed. Defendants may tax costs.