UNITED STATES of America,
Plaintiff,

v.

Angela S. FORD, et al., Defendants,

and

BAC Home Loans Servicing LP, and
Angela S. Ford, Counterplaintiffs,

v.

United States of America,
Counterdefendant,

and

BAC Home Loans Servicing LP,
and Angela S. Ford, Third–
Party Plaintiffs,

v.

Delbert Mullens, Third–
Party Defendant.

Case No. 10–12642.

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 13, 2012.

Patrick B. Gushue, U.S. Department of Justice, Washington, DC, for Plaintiff.

Amy L. Gottlieb, Hertz Schram, Bloomfield Hills, MI, for Defendants and Third–Party Plaintiffs.

Ari M. Charlip, Hertz Schram P.C., Bloomfield Hills, MI, Thomas P. Christy, Garan Lucow Miller, Troy, MI, Andrew J. Kolozsvary, Lauren M. Phillips, Dykema Gossett PLLC, Detroit, MI, for Defendants.

*OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*

MARIANNE O. BATTANI, District Judge.

This matter is before the Court on Defendant/Counterplaintiff Angela Ford and BAC Home Loans Servicing LP's (Defendants) Motion for Summary Judgment (Doc. No. 59), and Plaintiff/Counterdefendant United States of America's (Plaintiff or "Government") Motion for Summary Judgment (Doc. No. 60). The Court heard oral argument on January 24, 2012, and at the conclusion of the hearing took these matters under advisement. For the reasons that follow, Plaintiff's Motion is GRANTED and Defendants' motion is DENIED.

## I. INTRODUCTION AND STATEMENT OF FACTS

Plaintiff, the United States, filed suit to reduce to judgment tax debts of Delbert Mullens, and to enforce federal tax liens associated with those debts against property Mullins owned. Defendant Angela Ford now owns the property. Defendant BAC Home Loans Servicing ("BAC") is the current mortgagee. The facts giving rise to the lawsuit follow.

In August 1994, Mullens purchased property located at 4090 Cranbrook Court, No. 33, Bloomfield Hills, MI. The IRS made assessments of federal income taxes against Mullens based on returns he filed on November 26, 2001, for the 2000 tax year, and February 2, 2005, for the 2004 tax year. (Doc. No. 60, Exs. 4, 5). On February 23, 2003, an additional deficiency of taxes was assessed for the 2000 tax year. (Doc. No. 60, Ex. 4). Mullens did not pay the amount due—$359,750.15, (Doc. No. 60, Ex. 6).

On January 17, 2005, Mullens applied for a loan to refinance his property. He denied any federal tax debts in his loan application. On February 2, 2005, he executed a promissory note and mortgage in favor of Fremont Investment & Loan ("Fremont") for $595,000. (Doc. No. 60, Ex. 8). The Fremont mortgage, which was not a purchase money mortgage, was recorded over one month later, on March 9, 2005. (Doc. No. 60, Ex. 9).

After he received his loan, Mullins filed his 2004 tax return, reflecting a $193,314 tax liability. On February 16, 2005, a delegate of the Secretary of the Treasury filed a Notice of Federal Tax Lien (NFTL), as required by 26 U.S.C. § 6323(f), with the Oakland County

Clerk/Register of Deeds. (Doc. No. 60, Ex. 7).

Mullens defaulted on the Fremont mortgage, and the property was foreclosed. On March 24, 2006, MERS as nominee for Fremont assigned the mortgage to Deutsche Bank National Trust Company ("Deutsche") as Trustee. The assignment was recorded on March 24, 2006. (Doc. No. 60, Ex. 10). On May 9, 2006, Litton Loan Servicing, L.P. ("Litton"), caused a sheriff's deed to be issued to Deutsche pursuant to the Michigan foreclosure by advertisement statute. (Doc. No. 60, Ex. 11). Neither Deutsche Bank nor MERS provided personal service to the IRS as required by statute; the only notice was through posting and publication. (Doc. No. 60, Ex. 9).

Litton subsequently executed a quit claim deed to Deutsche on January 8, 2009. (Doc. No. 60, Ex. 12). Angela Ford purchased the property from Deutsche that day, and the purchase was recorded on February 3, 2009. Before she purchased the Property, Ford was informed of the NFTL. (Doc. No. 60, Ex. 17).

Just over two years after Ford's purchase, on April 11, 2011, the U.S. filed its Second Amended Complaint ("SAC") in this lawsuit. In its SAC, the Government named the following as defendants: Ford, BAC, Deutsche Bank National Trust Company, Deutsche Bank as Trustee for Fremont Home Loan Trust, MERS, and Kenneth Nathan, as Chapter 7 Trustee of New Haven Foundry, Inc. On July 20, 2011, Plaintiff obtained a Judgment against Mullens in the amount of $359,750.16, for income taxes for the taxable years 2000, and 2004, plus statutory additions. (Doc. No. 55, Ex. 19).

Ford and BAC contest the lien enforcement action. They filed a counterclaim against the U.S. and a third-party complaint against Mullens. Defendants assert claims for quiet title and declaratory relief that Plaintiff has no interest in the Property, and they advance a claim of an unjust enrichment against Mullens. On January 11, 2011, a default against Mullens was entered.

The parties subsequently moved for summary judgment. The issues raised in the motions are whether the U.S. gave proper notice and therefore has a valid lien on the Property; whether Defendants' interest in the Property is superior to the Government's lien, and if not, whether Defendants nevertheless are entitled to equitable relief.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) authorizes a court to grant summary judgment if "the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." There is no genuine issue of material fact if there is no factual dispute that could affect the legal outcome on the issue. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether to grant summary judgment, this Court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Hawkins v. Anheuser–Busch, Inc.,* 517 F.3d 321, 332 (6th Cir.2008). However, the nonmoving party "cannot rely merely on allegations but must set out specific facts showing a genuine issue for trial." *Chappell v. City of Cleveland,* 585 F.3d 901, 906 (6th Cir. 2009).

## III. ANALYSIS

### A. Notice and Demand

The parties disagree as to whether notice and demand in this case were given in compliance with the law. Under 26 U.S.C.

§ 6321, a lien on an individual's property arises when the individual is liable to pay a tax, but neglects or refuses to pay the tax after notice of the liability is given. However, "[t]he lien imposed by section 6321 shall not be valid against any . . . holder of a security interest . . . until notice thereof which meets the requirements of [26 U.S.C. § 6323(f) ] has been filed." 26 U.S.C. § 6323(a). Section 6323(f) requires that notice of a lien on real property be filed according to the laws of the state where the property is located.

Accordingly, the procedural notice requirement for a federal tax lien requires written notice and demand to the person liable, in this case, Mullins. When no payment is made within the required time frame, a lien arises.

Defendants contend that the U.S. may have failed to comply with the notice requirements, conduct which would render the NFTL void. According to Defendants, the Government's information regarding notice to Mullens is highly suspect based on the fact that Mullens filed his return two months before the April 15, 2005, deadline. They suggest that a savvy business owner would not rush to file tax returns showing his delinquent status in advance of the April 15 deadline. In 2000, for example, when there also was a deficiency, Mullins asked for extension to file his tax return.

■ Defendants' speculation does not satisfy their burden. The U.S. provided forms authenticating the regularity of the notice. Specifically, under governing case law, IRS assessments evidenced by Certificates of Assessments, Payments, and Other Specified Matters, IRS Form 4340, are sufficient to prove that the IRS made its assessments and that it made these assessments according to the requirements of the Internal Revenue Code. *See, e.g., Gentry v. United States,* 962 F.2d 555, 557 (6th Cir.1992) (noting that "Certificates of assessments and payments are generally regarded as being sufficient proof, in the absence of evidence to the contrary, of the adequacy and propriety of notices and assessments that have been made"). Also, Form 3522–Part 1(the Notice and Demand form), provided by the IRS, corroborates the propriety of the notice and demand. The Form indicates that notice was sent to Mullens at 4090 Cranbrook Court, on February 2, 2004, the same date set forth in Form 4340. (*See* Doc. No. 60, Exs. 4, 5).

In light of the record evidence, Defendants fail to demonstrate the existence of a genuine factual dispute. In sum, Ford and BAC have no evidence to support their position that the IRS may not have followed proper procedures. Consequently, the Court addresses the next issue, whether Defendants can gain priority over the lien by stepping into the shoes of Fremont.

**B. Priority**

■ The question of priority, which concerns both federal and state law is well established. When determining the interest in property or rights to property held, courts look to state law. Where a federal tax lien has attached to a state-created property interest, courts look to federal law to determine the priority of competing liens on the property or rights to property. *Aquilino v. United States,* 363 U.S. 509, 512–513, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960); *Mount Carmel Mercy Hosp. v. IRS,* No. 09–1330, 920 F.2d 933 at *1 (6th Cir. Dec. 12, 1990) (unpublished table opinion) ("state law is used to determine whether there is an interest in property; however, federal law is used to determine priority of interest where federal tax liens are involved."). Under the Internal Revenue Code, a federal tax lien "shall not be valid as against any purchaser, holder of a security interest, mechanic's lien or, or

judgment lien creditor until notice thereof ... has been filed by the Secretary." 26 U.S.C. § 6323(a). Thus, "priority of the federal tax lien provided by 26 U.S.C. § 6321 as against liens created under state law is governed by the common-law rule-the first in time is the first in right." *United States v. Pioneer Am. Ins. Co.*, 374 U.S. 84, 87, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963).

■ Under Michigan law, interests in real property are perfected by recording them with the Register of Deeds in the county where the property is situated. Both Plaintiff and Fremont did that, but Plaintiff acted first. The NFTL was filed with the local recorder of deeds on February 14, 2005. The Fremont Mortgage was not filed March 9, 2005. Thus, Plaintiff's tax lien has priority over Fremont's mortgage, because the lien was filed first.

There is an important qualification, however, to the first-in-time rule: "Where, under local law, one person is subrogated to the rights of another with respect to a lien or interest, such person shall be subrogated to such rights for purposes of any lien imposed by section 6321." 26 U.S.C. § 6323(i)(2). Michigan courts have recognized two forms or types of subrogation, as explained in *French v. Grand Beach Co.*, 239 Mich. 575, 215 N.W. 13, 14 (1927).

The doctrine of subrogation rests upon the equitable principle that one, who, in order to protect a security held by him, is compelled to pay a debt for which another is primarily liable, is entitled to be substituted in the place of and to be vested with the rights of the person to whom such payment is made, without agreement to that effect. This doctrine is sometimes spoken of as "legal subrogation," and has long been applied by courts of equity. There is also what is known as "conventional subrogation." It arises from an agreement between the debtor and a third person whereby the latter, in consideration that the security of the creditor and all his rights thereunder be vested in him, agrees to make payment of the debt in order to relieve the debtor from a sacrifice of his property due to an enforced sale thereof. It is wholly independent of any interest in the property which the lender may have to protect.

More importantly, the doctrine "does not, however, inure to a mere volunteer who has no equities which appeal to the conscience of the court." *Id.*

■ Defendants' claim that the Fremont mortgage should be subrogated to the rights of the prior mortgage holder fails on this ground. Michigan only allows for subrogation when the party seeking subrogation was forced to pay, through a contractual or other duty. *Hartford Accident & Indem. Co. v. Used Car Factory, Inc.*, 461 Mich. 210, 600 N.W.2d 630, 631 (1999). *Accord Van Dyk Mortgage Corp. v. U.S.*, 503 F.Supp.2d 876, 880–81 (W.D.Mich.2007) (reviewing Michigan law regarding the mere volunteer rule and concluding that it "has long been a part of Michigan jurisprudence regarding equitable subrogation").

At oral argument, Defendants advanced the position that the decision in *Walker v. Bates*, 244 Mich. 582, 222 N.W. 209 (1928) eliminated the mere volunteer rule. This Court disagrees. In *Walker*, the Michigan Supreme Court addressed equitable subrogation and found the doctrine unavailable to the defendants, who had paid sums after notice of lis pendens was filed. The *Walker* Court did not discuss the volunteer rule in the decision, and the Court rejects Defendants' request to ignore longstanding authority from Michigan's highest court.

The Court's decision is not altered by Defendants' position that the proceeds of

the Fremont mortgage were necessary to preserve the property from foreclosure or another action that would cause the intervening lien holders to lose their security interests. They conclude that Fremont mortgage qualifies as an exception under *Washington Mut. Bank, F.A. v. Shore-Bank Corp.,* 267 Mich.App. 111, 703 N.W.2d 486, 496 (Mich.Ct.App.2005) (emphasis added), wherein the court noted,

> [W]e are unaware of any authority regarding the application of the doctrine of equitable subrogation to support the general proposition that a new mortgage, granted as part of a generic refinancing transaction, can take the priority of the original mortgage, which is being paid off, giving it priority over intervening liens.... Such bolstering of priority may be applicable where the new mortgagee is the holder of the mortgage being paid off or where the **proceeds of the new mortgage are necessary to preserve the property from foreclosure or another action that would cause the intervening lien holders to lose their security interests.**

The case law is not persuasive because Fremont acted as a volunteer in the mortgage transaction with Mullens. It was not an intervening lien holder in danger of losing its security interest. Defendants fail to show the Court how they are entitled to advance ahead of the NFTL based upon the actions of Fremont. Fremont's own delay in recording the mortgage resulted in its loss of priority. Accordingly, the Court directs its attention to the final argument advanced by Defendants.

### C. Equity

At oral argument, Defendants presented a "just stinks" rationale for a decision in their favor, noting that Mullens, not Ford, was the taxpayer that owed the debt to the Government. Although the Court is not unsympathetic to the situation in which Ford finds herself, she is not an innocent homeowner merely because she purchased her home for value, makes mortgage payments, and pays taxes and insurance. The equities do not support this position and neither "[j]ustice" nor "good legal conscience" dictate that her interest be placed ahead of the Government's. (Doc. No. 59 at 2). She purchased her property with constructive and actual knowledge of the tax lien. The Government complied with state and federal requirements to protect its lien. The equities, therefore, do not favor Defendants.

### IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff's motion and **DENIES** Defendants' motion.

**IT IS SO ORDERED.**